# EXHIBIT E





State of West Virginia
Office of the Attorney General
Patrick Morrisey
Attorney General

State of Indiana
Office of the Attorney General
Todd Rokita
Attorney General

April 2, 2024

Nasser H. Paydar, Ph.D.
Assistant Secretary
Office of Postsecondary Education
U.S. Department of Education
LBJ Building, 400 Maryland Avenue, S.W.
Washington, DC 20202

Dear Dr. Paydar:

In your "Dear Colleague" letter dated February 26, 2024, you told postsecondary education
institutions "that [Federal Work Study] funds may be used for employment by a Federal, State,
local, or Tribal public agency for civic engagement work that is not associated with a particular
interest or group, consistent with 34 CFR § 675.22(b)(5)." You went on to advise that "[t]his work
can include supporting broad-based get-out-the-vote activities, voter registration, providing voter
assistance at a polling place or through a voter hotline, or serving as a poll worker." *Id.*

We urge you to reconsider this guidance, as it offends restrictions on the federal-work study
program and ignores the dangers that come with entangling public dollars in political functions.

## A.    Your Guidance Violates Federal Law.

Congress created federal work study programs in part "to encourage … community service
activities that will benefit the Nation and engender in the students a sense of social responsibility
and commitment to the community." 20 U.S.C. § 1087-51. With that goal in mind, Congress
authorized the Secretary of Education to "make grants" to higher education institutions "to assist
in the operation of work-study programs." *Id.* § 1087-53(a). The grant program has since become
a massive operation; it "funds thousands of postsecondary institutions to distribute over one billion
dollars annually to hundreds of thousands of student-workers."[1]

Congress expected those work-study grants to come with strings, one of which is that "work …
for a Federal, State, or local public agency" must be "in the public interest." *Id.* § 1087-53(b)(1).
Elsewhere, Congress specified three categories of activities that could be funded as "civic

---

[1] Shayak Sarkar, *Need-Based Employment*, 64 B.C. L. REV. 119, 139 (2023).

Nasser H. Paydar, Ph.D.
April 2, 2024
Page 2

_____

education and participation": "teach[ing] civics in schools," "rais[ing] awareness of government functions or resources," and "increas[ing] civic participation." *Id.* § 1087-53(e)(1). Yet Congress also clarified that colleges and universities were to prioritize "educat[ing] or train[ing] the public about evacuation, emergency response, and injury prevention strategies relating to natural disasters, acts of terrorism, and other emergency situations." *Id.* § 1087-53(e)(2)(A). "[G]et-out-the-vote activities" and the like appear nowhere on Congress's list of priorities.

Although Congress did not say that work "in the public interest" excludes political activity, that logic seems obvious. And the Secretary's regulations make the point crystal clear: "Work is not in the public interest if … [i]t involves any partisan or nonpartisan political activity." 34 C.F.R. § 675.22(b)(5). This restriction is broader even than the restrictions on political activity imposed on 501(c)(3) tax-exempt organizations.[2] Rightly so. The taxpayers should not have to foot the bill for anyone's political activity, regardless of who benefits. After all, "[p]olitical activities are private, not public, matters[,] and the use of public funds to pay employees hired for private purposes is unlawful."[3] For that reason, other agencies have recognized a "Government-wide Federal policy that Federal funds not be used for … political activities because to do so would not be an appropriate or cost-effective use of Federal tax dollars."[4]

Your "Dear Colleague" letter forgets these limits.[5] It says that colleges and universities may use Federal tax dollars to subsidize "broad-based get-out-the-vote activities, voter registration, … voter assistance …, or servi[ce] as a poll worker." These activities are political—*at least* in the non-partisan sense—and are often the most valuable political activities in which a party or candidate can engage. Indeed, some claim that "outreach activity by political campaigns, including door-to-door canvassing, phone banking, direct mail, and even advertising, has basically no effect on voters' choice of candidate in general elections."[6] What works, they claim, is "boosting turnout"[7] by "voters whose minds are already made up."[8] Targeted voter registration is particularly valuable to campaigns because it's expensive. In fact, one "experiment … found that voter registration efforts cost about $60 per vote for campaigns running them."[9]

Voter-registration efforts can serve overtly political functions even when they seem facially non-partisan, as turning out the right voters is often a matter of knowing where to boost "broad-based" turnout. During the 2020 presidential campaign, for example, the Center for Tech and Civic Life (CTCL) appeared to use this strategy to tilt the field toward President Biden. In Georgia, CTCL

_____

[2] Among other things, Treasury regulations prohibit those organizations from "[d]irectly or indirectly participat[ing] in, or interven[ing] in (including the publishing or distributing of statements), any political campaign on behalf of or in opposition to any candidate for public office." 26 C.F.R. § 1.501(c)(3)-1(b)(3)(ii).

[3] *People v. Ohrenstein*, 565 N.E.2d 493, 502 (N.Y. Ct. App. 1990) (Simons, J., dissenting).

[4] Small Business Development Center Program, 51 Fed. Reg. 37580, 37589 (Oct. 23, 1986).

[5] Although we focus here on the Higher Education Act, we note that some have suggested these activities could violate the Hatch Act and Anti-Deficiency Act, too. *See* Kyle Morris, *Biden admin accused of using taxpayer funds to help his own campaign with student voter registration scheme*, Fox News (Mar. 3, 2024), https://bit.ly/49bE7nS.

[6] Dylan Matthews, *A massive new study reviews the evidence on whether campaigning works. The answer's bleak.* Vox.com (Sep. 28, 2017, 8:00am EDT), https://tinyurl.com/4nn9z28f.

[7] *Id.*

[8] *Id.*

[9] *Id.*

Nasser H. Paydar, Ph.D.
April 2, 2024
Page 3

gave grants to election offices in counties that went to President Biden and counties that went to President Trump,[10] seemingly favoring no one.  But "CTCL's 10 biggest grants per capita all went to counties that Biden won, 6 of which are part of the greater Atlanta metropolitan area."[11]  Not surprisingly, "these 10 counties gave Biden 60 percent (1.49 million votes) of his statewide total in Georgia, and nearly 378,000 votes over 2016 Democratic turnout.  Trump, however, only received 691,000 votes in these counties in 2020, an increase of just 92,000 votes over his 2016 performance."[12]  Funding disparities seem to have achieved similar results in other battleground states.[13]  So "CTCL's 'non-partisan' designation seems like a lie because it concentrated in areas that helped Democrats most."[14]

In other words, laudable activities like encouraging voter turnout and registering voters have to happen somewhere, and that somewhere decides elections.  Your guidance effectively licenses colleges and universities to subsidize this activity—and potentially swing elections by choosing where to direct these funds—with taxpayer money.  That approach violates limitations imposed by law.

**B.      Your Guidance Does Not Provide Meaningful Protections Against Abuse.**

Practically, the purported guardrails in your "Dear Colleague" letter also will not work.  The letter suggests that money should be used only for "broad-based get-out-the-vote activities."  Yet that buzz-phrase supplies no meaningful guidance or limits when the partisan goal is to boost turnout in a Democrat- (or Republican-) leaning city.  It's also not clear whether "broad-based" applies to "voter registration' and "voter assistance," leaving partisans to direct these valuable activities at will.

Given your new direction, the regulations won't supply sufficient guardrails, either.  Work for a Federal, State, or local agency must be performed under "a written agreement" that "set[s] forth the [federal work-study] work conditions."  34 C.F.R. § 675.20(b)(1).  But, in relevant respects, the college and university are only responsible for "ensuring that … [the] student's work is properly supervised," *id.* § 675.20(b)(3)(ii), and that the "student's … employment conditions … are appropriate and reasonable," *id.* § 675.20(c)(1).  Day-to-day supervision, it seems, falls to the State or local election officials who will task the students with registering voters, "get[ting][]out[]the vote," and participating in the other election activities your guidance authorizes.

True, as your letter acknowledges, students aren't allowed to work "for an elected official" unless that official "is … responsible for [] regular [government] administration," 34 C.F.R.

---

[10] INFLUENCEWATCH.ORG, *Center for Tech and Civic Life (CTCL)*, https://tinyurl.com/22tzhp9n (last visited March 20, 2024) (stating that "[o]n a per capita basis, CTCL grants to counties that Donald Trump won averaged $1.41 and $5.33 that in counties Joe Biden won").

[11] *Id.*

[12] *Id.*

[13] *See id.*

[14] Post Editorial Board, *How Mark Zuckerberg helped Dems sway the 2020 election*, NYPOST.COM (Oct. 13, 2021, 9:54 p.m. ET), https://tinyurl.com/yc8j5d39.

Nasser H. Paydar, Ph.D.
April 2, 2024
Page 4

_____

§ 675.22(b)(2), and you correctly observe that this description fits "a Secretary of State or local election official[]." But it seems naïve at best to assume that elected (or even appointed) election officials have no partisan preferences of their own. Again, decisions about which neighborhoods and precincts to work can pay big dividends in November.

It's also naïve at best to assume that university or college administrators will take a close enough look to see that students' seemingly impartial election activities aren't structured as "partisan … political activity." *Id.* § 675.22(b)(5). How much can be gleaned from a "periodic[] visit [to] each off-campus organization"?[15] Selective tasking won't be easy to detect or prove. Even if administrators do pay attention, who's to say they will object if the election official's agenda aligns with their own? Survey data indicate that left-leaning college and university administrators outnumber conservative-leaning administrators by "12-to-one," a ratio "over twice the size of the nearest group" of professions."[16] How hard will it be—and how seemingly innocuous—for partisan "administrators[,] who call the shots outside the classroom[,]"[17] to steer students toward officials with similar leanings?

## C.   Your Guidance Appears To Be Part Of A Broader Effort To Use Public Initiatives To Enlist Favored Voters.

Unfortunately, spending tax money to get more Democrat voters to the polls this fall looks to be this administration's policy—which leads one to suspect that the problems with your letter are features, not bugs.[18] That perception certainly tallies with the Administration's attempts to "bribe the voters"[19] with student loan "forgiveness" schemes.[20] Although the Biden administration is now losing more support among younger voters,[21] voters in the age 18-to-29 cohort favored President Biden by a 24-point margin in 2020.[22] So increasing these voters' "civic awareness and … voter registration activities" is smart politics for an administration desperately trying to hang onto its position. Similarly, the administration is automatically sending voter-registration information to everyone who registers for Obamacare health-insurance—another example of pulling votes from a politically aligned voter cohort with public dollars.[23] It has likewise promoted voter registration at tax-counseling sites for the elderly.[24]

_____

[15] *2023-2024 Federal Student Aid Handbook*, Vol. 6, Ch. 2, FSAPARTNERS.ED.GOV, https://tinyurl.com/bdhpskaa.

[16] Samuel J. Abrams, *One of the Most Liberal Groups in America*, INSIDEHIGHERED.COM (Nov. 7, 2018), https://tinyurl.com/4utz8zsv.

[17] *Id.*

[18] Executive Order on Promoting Access to Voting, Exec. Order No. 14019, 2021 WL 856450 (Mar. 7, 2021).

[19] Mitt Romney (@SenatorRomney), X (Aug. 24, 2022), https://tinyurl.com/2tfd876w.

[20] *See, e.g.*, *FACT SHEET: President Biden Cancels Student Debt for more than 150,000 Student Loan Borrowers Ahead of Schedule*, WHITEHOUSE.GOV (Feb. 21, 2024), https://tinyurl.com/3aa8vwhr.

[21] Bianca Seward, *Young voters explain why they're bailing on Biden—and whether they'd come back*, NBC NEWS (Dec. 18, 2023), https://bit.ly/4as12ML.

[22] Ruth Igielnik, et al., *Behind Biden's 2020 Victory*, PEWRESEARCH.ORG (June 30, 2021), 10, https://tinyurl.com/2njm2c6f.

[23] Eugene Scott, *VP Harris to announce Biden's team's plans to boost voting access*, AXIOS (Feb. 27, 2024), https://bit.ly/3PAjKtK.

[24] Internal Revenue Service, *Guidance for Promoting Voter Registration at VITA/TCE Sites* (June 2022), https://bit.ly/4cxfJjo; *see also* William H. Frey, *Older voters may secure a Biden victory in 2020's swing states*,

Nasser H. Paydar, Ph.D.
April 2, 2024
Page 5

But that's not how elections are supposed to work in our Republic. Parties and candidates are supposed to work and fund their own election efforts. Both sides have every incentive to register their supporters to vote, every incentive to get their supporters to the polls—in short, every incentive to do the things your "Dear Colleague" letter would license partisans to do on the public dime. No doubt, parties and candidates will spend millions of private dollars on these activities between now and November. And that's as it should be.

What's not helpful, or "in the public interest," is licensing colleges and universities to spend public money on devious—yet seemingly civic-minded—efforts to bring favored voters to the polls. Voters are already fearful that this election won't be a fair one.[25] And Vice President Harris did nothing to reassure them when she claimed that "left-wing" activists like Vasu Abhiraman are the sort of "nonpartisan poll workers" "[o]ur democracy" can't do without.[26] As one Congresswoman recently put it, this "vote-buying sweepstakes" should just not be on the table, especially in a political climate like ours.[27]

* * * *

We urge you to reconsider your guidance and advise all postsecondary education institutions "that FWS funds may [*not*] be used for … supporting … get-out-the-vote activities, voter registration, providing voter assistance at a polling place or through a voter hotline, or serving as a poll worker" under *any* circumstances. If the Biden Administration really cares about "[r]espect[ing] free and fair elections" and "[r]estor[ing] trust in our institutions,"[28] this pullback would be a good place to start.

Sincerely,

Patrick Morrisey
West Virginia Attorney General

Todd Rokita
Indiana Attorney General

BROOKINGS (Oct. 28, 2020), https://bit.ly/3TRt3YX (expressing a liberal belief that "older voters—especially seniors age 65 and older—are turning away from Trump, if not Republicans in general").
[25] *See* Christina A. Cassidy and Linley Sanders, *GOP confidence in 2024 vote count low after years of false election claims, AP-NORC poll shows*, APNEWS.COM (Jul. 11, 2023, 12:03 AM EDT), https://tinyurl.com/yyby227z.
[26] Morris, *supra*, footnote 5.
[27] Press Release, *Foxx Slams Biden's Student Voter Registration Scheme*, HOUSE COMMITTEE ON EDUCATION AND THE WORKFORCE (Mar. 6, 2024), https://bit.ly/4a2rooS.
[28] Joseph R. Biden, *State of the Union Address As Prepared for Delivery*, WHITEHOUSE.GOV (Mar. 7, 2024), https://tinyurl.com/3hk9hyhj.

Nasser H. Paydar, Ph.D.
April 2, 2024
Page 6

_____

Tim Griffin
Arkansas Attorney General

Christopher M. Carr
Georgia Attorney General

Raúl Labrador
Idaho Attorney General

Brenna Bird
Iowa Attorney General

Kris Kobach
Kansas Attorney General

Lynn Fitch
Mississippi Attorney General

Austin Knudsen
Montana Attorney General

Mike Hilgers
Nebraska Attorney General

Drew Wrigley
North Dakota Attorney General

Gentner F. Drummond
Oklahoma Attorney General

Alan Wilson
South Carolina Attorney General

Marty Jackley
South Dakota Attorney General

Nasser H. Paydar, Ph.D.
April 2, 2024
Page 7

_____

Ken Paxton
Texas Attorney General

Sean D. Reyes
Utah Attorney General