**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION**

| | |
|---|---|
| AMERICA FIRST POLICY INSTITUTE et al., | |
| *Plaintiffs*, | |
| vs. | **No. 2:24-cv-152-Z** |
| JOSEPH R. BIDEN, JR., in his official capacity as President of the United States, et al., | |
| *Defendants*. | |

**<u>MEMORANDUM OF LAW IN SUPPORT OF MOTION TO INTERVENE BY PROPOSED INTERVENOR-DEFENDANTS LEAGUE OF WOMEN VOTERS, BLACK VOTERS MATTER, AND NAEVA</u>**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................... 1

FACTUAL BACKGROUND ................................................................................. 2

    I.    Executive Order 14019 on "Promoting Access to Voting" ................................. 2

    II.    Proposed Intervenor-Defendants ...................................................................... 4

ARGUMENT .......................................................................................................... 9

    III.    Proposed Intervenor-Defendants Are Entitled to Intervene as of Right
        Under Rule 24(a)(2). .......................................................................................... 9

        A.    Proposed Intervenor-Defendants' Motion Is Timely. ................................ 9

        B.    Proposed Intervenor-Defendants Have Substantial Legal Interests
            in the Case. ............................................................................................. 12

        C.    Proposed Intervenor-Defendants' Ability to Protect Their Interests
            Will Be Impaired Absent Intervention. ................................................... 17

        D.    Defendants Inadequately Represent Proposed Intervenor-
            Defendants' Interests. ............................................................................. 20

    IV.    Alternatively, Proposed Intervenor-Defendants Should Be Granted
        Permissive Intervention Under Rule 24(b). ..................................................... 23

    CONCLUSION ................................................................................................ 24

## TABLE OF AUTHORITIES

**Cases**

*Ass'n of Prof. Flight Attendants v. Gibbs*, 804 F.2d 318 (5th Cir. 1986) ..................................... 10
*Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179 (2022) .................................................. 21
*Brumfield v. Dodd*, 749 F.3d 339 (5th Cir. 2014) ................................................................ passim
*Dev. Fin. Corp. v. Alpha Hous. & Health Care, Inc.*, 54 F.3d 156 (3d Cir. 1995) ..................... 16
*Doe No. 1 v. Glickman*, 256 F.3d 371 (5th Cir. 2001) .............................................................. 22
*Doe v. Duncanville Indep. Sch. Dist.*, 986 F.2d 953 (5th Cir. 1993) .......................................... 11
*Edwards v. City of Houston*, 78 F.3d 983 (5th Cir. 1996) .......................................................... 12
*Entergy Gulf States La., L.L.C. v. U.S. E.P.A.*, 817 F.3d 198 (5th Cir. 2016) ........................... 21
*Fulani v. League of Women Voters Educ. Fund*, 882 F.2d 621 (2d Cir. 1989) ............................ 16
*Grutter v. Bollinger*, 188 F.3d 394 (6th Cir. 1999) .................................................................... 18
*Kane Cnty., Utah v. United States*, 94 F.4th 1017 (5th Cir. 2024) ....................................... 21, 22
*La Union del Pueblo Entero v. Abbott*, 29 F.4th 299 (5th Cir. 2022) ................................... passim
*La. State Conf. of NAACP v. Louisiana*, No. CV-19-479-JWD-SDJ, (M.D. La. July 11, 2022) . 10
*McDonald v. E. J. Lavino Co.*, 430 F.2d 1065 (5th Cir. 1970) ................................................... 11
*New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452 (5th Cir. 1984).......... 24
*Prete v. Bradbury*, 438 F.3d 949 (9th Cir. 2006) ................................................................. 16, 18
*Ross v. Marshall*, 426 F.3d 745 (5th Cir. 2005) ........................................................................ 21
*Rotstain v. Mendez*, 986 F.3d 931 (5th Cir. 2021) ...................................................................... 9
*Samsung Elecs. Co. v. Panasonic Corp.*, No. 10-CV-03098-JSW, (N.D. Cal. Sept. 26, 2016)... 15
*Sierra Club v. Glickman*, 82 F.3d 106 (5th Cir. 1996) ............................................................... 22
*Skeans v. Key Com. Fin., LLC*, No. CV 18-1516-CFC-MPT, (D. Del. Jan. 24, 2022) ............... 15
*Stallworth v. Monsanto Co.*, 558 F.2d 257 (5th Cir. 1977) ......................................... 10, 11, 12
*Texas v. United States*, 805 F.3d 653 (5th Cir. 2015) ................................................... 12, 17, 21
*Trbovich v. United Mine Workers of Am.*, 404 U.S. 528 (1972) ................................................. 21
*United States ex rel Hernandez v. Team Fin., L.L.C.*, 80 F.4th 571 (5th Cir. 2023) .............. 23, 24
*W. Energy All. v. Zinke*, 877 F.3d 1157 (10th Cir. 2017) .......................................................... 22
*Wal-Mart Stores, Inc. v. Texas Alcoholic Beverage Comm'n*, 834 F.3d 562 (5th Cir. 2016) ...... 11
*Werner v. KPMG LLP*, 415 F. Supp. 2d 688 (S.D. Tex. 2006) .................................................. 16

**Statutes**

52 U.S.C. § 20506 ......................................................................................................................... 3
52 U.S.C. § 20506 ......................................................................................................................... 3
52 U.S.C. §§ 20501 ....................................................................................................................... 2
52 U.S.C. §§ 20504, 20506 .......................................................................................................... 3

**Other Authorities**

Am. Compl................................................................................................................................ passim
Exec. Order No. 14019 86 Fed. Reg. 13,623 (Mar. 7, 2021).............................................. 2, 3, 4
Rev. Rul. 2007-41, 2007-1 C.B. 1421 (2007)............................................................................ 13

**Rules**

26 C.F.R. § 1.501 ........................................................................................................................ 13
Fed. R. Civ. P. 11 ........................................................................................................................ 14
Fed. R. Civ. P. 12 ........................................................................................................................ 10
Fed. R. Civ. P. 24(a) ................................................................................................................ 9, 23

## INTRODUCTION

Proposed Intervenor-Defendants League of Women Voters (the "League"), Black Voters Matter ("BVM") and Naeva (formerly known as Native American Voters Alliance) (collectively, "Proposed Intervenor-Defendants") are nonpartisan, nonprofit organizations that seek to intervene in this action as defendants to (1) defend against allegations that falsely implicate them in partisan conduct that threatens their reputation and could possibly threaten their legal status as nonpartisan entities; and/or (2) protect their institutional interests in supporting widespread nonpartisan voter registration, protecting voting rights, empowering voters, and defending democracy. Proposed Intervenor-Defendants are entitled to intervene as of right under Federal Rule of Civil Procedure 24(a)(2). Their motion is timely because it was filed before any answer and just after Defendants filed their opposition to the Motion for Temporary Restraining Order and Preliminary Injunction. Proposed Intervenor-Defendants have substantial legal interests that could be impaired by the disposition of the pending action, as evidenced by the Amended Complaint identifying some of them by name and making allegations related to their direct interests and advocacy in support of the challenged activities. Am. Compl. ¶¶ 112, 241–44. Further, the Amended Complaint's false accusations that the League and BVM engaged in partisan activity risk causing severe reputational harm and potentially threaten their tax-exempt status. Am. Compl. ¶¶ 84–85 & n.6, 112–123, 124 & n.7, 259.

Defendants inadequately represent Proposed Intervenor-Defendants' interests because the federal government has no interest in Proposed Intervenor-Defendants' reputation or tax-exempt status. The named Defendants, moreover, represent broader governmental interests and may hold different views about the value of the challenged activities or have different priorities in seeking to defend them.

Alternatively, the Court should permit Proposed Intervenor-Defendants to intervene

permissively under Federal Rule of Civil Procedure 24(b)(1)(B) because doing so will not prejudice the other parties and the Proposed Intervenor-Defendants' defense shares common questions of law and fact to the main action.

## FACTUAL BACKGROUND

I.      **Executive Order 14019 on "Promoting Access to Voting"**

On March 7, 2021, President Biden issued Executive Order 14019 on "Promoting Access to Voting," which recognized the Administration's policy "to promote and defend the right to vote for all Americans who are legally entitled to participate in elections." Exec. Order No. 14019 § 2, 86 Fed. Reg. 13,623 (Mar. 7, 2021). Acknowledging that several federal laws assign the federal government a "key role" in protecting the right to vote, the Executive Order announced that "[e]xecutive departments and agencies should partner with State, local, Tribal, and territorial election officials to protect and promote the exercise of the right to vote, eliminate discrimination and other barriers to voting, and expand access to voter registration and accurate election information." *Id.* §§ 1–2.

The National Voter Registration Act ("NVRA") is a prime example of a federal law that unequivocally authorizes the federal government to protect the right to vote. It states that "the right of citizens of the United States to vote is a fundamental right" and that "it is the duty of the Federal, State, and local governments to promote the exercise of that right." 52 U.S.C. §§ 20501(a)(1)-(2). Congress passed the NVRA in 1993 "to establish procedures that will increase the number of eligible citizens who register to vote in elections for Federal office"; and "to make it possible for Federal, State, and local governments to implement this chapter in a manner that enhances the participation of eligible citizens as voters in elections for Federal office." *Id.* §§ 20501(b)(1), (2)(b)(1) & (2). The NVRA has played an important role in the progress toward this goal over the last almost 30 years, particularly by requiring states to register eligible citizens who transact with

2

state agencies such as departments of motor vehicles (DMVs) and public assistance and disability offices. 52 U.S.C. §§ 20504, 20506. Importantly, the plain language of the NVRA makes clear that all voter registration opportunities provided by designated government voter registration agencies must be non-partisan.[1]

In addition to requiring states to conduct voter registration through certain specified state offices, the NVRA mandates that "each State shall designate other offices" and agencies as additional "voter registration agencies," which may include "federal . . . offices." 52 U.S.C. § 20506(a)(3)(B)(ii).  One of the most prominent features of the Executive Order is its directive that federal agencies, agree "to be designated as a voter registration agency" if "requested by a State, "to the greatest extent practicable and consistent with applicable law."  Exec. Order No. 14019 § 4. In other words, the Executive Order encourages federal agencies to work with state election officials and accept NVRA designations coming from those state election officials.  By directing federal agencies to accept requests by States for designation, the Executive Order merely promotes the use of a long-standing—albeit largely untapped—provision of federal law.

The Executive Order also includes other directives to federal agencies consistent with the NVRA and other federal statutes.  For example, it directs federal agencies to "evaluate ways in which the agency can, as appropriate and consistent with applicable law, promote voter registration and voter participation," including consideration of whether there are "ways to provide relevant information . . . about how to register to vote" in the course of agency "activities or services that

---

[1] *See* 52 U.S.C. § 20506(a)(5) (requiring that agency staff must not "(A) seek to influence an applicant's political preference or party registration; (B) display any such political preference or party allegiance; (C) make any statement to an applicant or take any action the purpose or effect of which is to discourage the applicant from registering to vote; or (D) make any statement to an applicant or take any action the purpose or effect of which is to lead the applicant to believe that a decision to register or not to register has any bearing on the availability of services or benefits"). State DMV offices have successfully been providing citizens with non-partisan voter registration opportunities since the NVRA went into effect in 1995.

directly engage with the public," and "ways to facilitate seamless transition from agencies' websites directly to State online voter registration systems or appropriate Federal websites, such as Vote.gov."  Exec. Order No. 14019 § 3. The Executive Order also directs the General Services Administration to "modernize . . . Vote.gov," *id.* § 5; directs the Director of the Office of Personnel Management "to provide recommendations . . . on strategies to expand the Federal Government's policy of granting employees time off to vote . . . [and] to better support Federal employees who wish to volunteer to serve as non-partisan poll workers or non-partisan observers," *id.* § 6; and directs specific agencies to take steps "consistent with applicable law" to promote access to voter registration by individuals with disabilities, active-duty military members, individuals in federal custody who remain eligible to vote, and Native American communities, *id.* §§ 6–10.

## II.   Proposed Intervenor-Defendants

Proposed Intervenor-Defendants are non-partisan, nonprofit organizations that seek to intervene in this action as defendants to protect their interests.

**The League of Women Voters.** The League is a non-partisan, nonprofit, community-based membership organization that promotes political responsibility by encouraging Americans to participate in the electoral process. *See* LWV, *About Us*, *available at* https://www.lwv.org/about-us.  Founded in 1920 as an outgrowth of the struggle to win voting rights for women, the League now has more than a million members and supporters and is organized in more than 700 communities and in every state. *Id.* The League's mission is to empower voters and defend democracy, and its vision is "a democracy where every person has the desire, the right, the knowledge, and the confidence to participate." *Id.* It is a foundational principle, written into the bylaws of the League, that all its work is non-partisan, and it never supports or opposes any political party or candidate. *Id.*

The League comprises two branches: the League of Women Voters of the United States

4

("LWVUS") and the League of Women Voters Education Fund ("LWVEF"). *Id.* The LWVUS "encourages informed and active participation in government, works to increase understanding of major public policy issues, and influences public policy through education, and advocacy." *Id*. The LWVUS is a 501(c)(4) social welfare organization. *See* LVW, *Ways to Give*, *available at* https://www.lwv.org/about-us/ways-give.  The LWVEF "works to register and provide voters with election information through its election resource VOTE411.org, candidate forums, and debates." *See* LWV, *About Us*, *available at* https://www.lwv.org/about-us.  LWVEF is a 501(c)(3) educational organization. *See* LVW, *Ways to Give*, *available at* https://www.lwv.org/about-us/ways-give.  There is no doubt about the tax-exempt status of the League and its sub-branches. *See* LWV, *§ 501(C)(3) or (C)(4):   Which To Be, Or Both?* (June 2018), *available at* https://my.lwv.org/sites/default/files/leagues/solano-county/lwvussec501c3faqs-1-1-1.pdf ("Leagues have qualified as tax exempt under §501(c)(4) as a 'social welfare' organization. Over the years, LWVUS, most state Leagues and larger local Leagues have formed a 'sister' Education Fund entity which is qualified as tax exempt under §501(c)(3).").

The mission of the League and the work of both its branches includes expanding access to voting. "Increased accessibility to the electoral process is integral to ensuring that every American can exercise their right to vote. Leagues across the United States work year-round to promote pro-voter reforms that both preserve our existing rights and provide flexibility for casting ballots in order to be inclusive of historically underserved communities." LWV, *Expanding Voter Access*, *available at* https://www.lwv.org/voting-rights/expanding-voter-access. The League's mission to promote more voter registration includes expanding voter registration opportunities for all eligible U.S. citizens. This includes the High School Voter Registration Project, which is a national effort to encourage young people to register to vote and participate in our democracy—especially young

people of color. *See* LWV, *High School Voter Registration*, *available at* https://www.lwv.org/educating-voters/high-school-voter-registration. Through its local affiliates, the League supports voters in communities across the country throughout the election process. Their efforts include registering individuals to vote by regularly conducting voter registration drives and maintaining VOTE411—an online resource that allows voters to access ballot information and equips individuals with information to create their voting plan, whether in person, early, or by mail.

The League founded the Motor Voter Coalition in the 1980s and 1990s and served as national co-chair of the campaign to pass and implement the NVRA. *See* LWV, *Honoring the National Voter Registration Act*, *available at* https://www.lwv.org/blog/honoring-national-voter-registration-act. The League has been one of the foremost active defenders of the NVRA by, *inter alia*, notifying, working with, and/or filing enforcement lawsuits against Secretaries of State to correct NVRA violations in Alabama, Arizona, Florida, Georgia, Louisiana, Montana, Ohio, Pennsylvania, Tennessee, and Texas. The League also has filed litigation to protect the spirit and text of the NVRA. Through its advocacy, litigation, and grassroots efforts, the League registers many thousands of voters every election cycle and is instrumental in ensuring access to voter registration for all eligible voters.

As part of its work to achieve its mission, the League supported and advocated for implementation of the Executive Order. *See* LWV, *Protecting the National Voter Registration Act*, *available at* https://www.lwv.org/blog/protecting-national-voter-registration-act. An Executive Order encouraging the federal government to do more to expand access to non-partisan voter registration is critical to the League's mission of creating a democracy where every eligible person who desires to register to vote has a meaningful opportunity to register to vote.

**Black Voters Matter.** Black Voter Matters is a national organization with the goal to increase the power in marginalized, predominantly Black communities. *See* BVM, *Our Purpose*, *available at* https://blackvotersmatterfund.org/our-purpose/#. Black Voters Matters is a non-partisan organization. The BVM Capacity Building Institute is BVM's 501(c)(3) entity. *See* BMV, *DONATE*, *available at* https://blackvotersmatterfund.org/donate/. BVM is dedicated to expanding Black voter engagement and increasing progressive power through movement-building and engagement. Working with grassroots organizations, specifically in key states in the South, BVM seeks to increase voter registration and turnout. *See* BVM, *2023 Impact Report*, *available at* https://blackvotersmatterfund.org/wp-content/uploads/2024/07/2023-Impact-Report.pdf.

To achieve its goals, BVM works throughout the country providing grant funding, outreach tools, training opportunities and media amplification to partners. *See id.* This work is focused on increasing voter engagement in the states where BVM is working with its partners. *See id.*

BVM's work and mission include "increasing voter registration and turnout" and advocating for policies to expand voting rights and access. *See* BVM, *Our Purpose*, *available at* https://blackvotersmatterfund.org/our-purpose/. All the voter registration that Black Voters Matters engages in is non-partisan, and voter registration is a big part of its mission. BVM promotes expanding voter registration opportunities for all eligible U.S. citizens. As noted in its purpose statements, "Black voters matter *everywhere*, including rural counties and smaller cities/towns that are often ignored by candidates, elected officials, political parties and the media." *See id*; BVM, *Our Work*, *available at* https://perma.cc/NUY9-JGBA. This voter registration work includes working regularly on voter registration efforts for students at HBCUs. *See, e.g*., BVM, "*details about campus events*," *available at* https://perma.cc/JV8W-ZVEF; BET, Election Season is OUR Season: BET Media Group Announces its Annual #ReclaimYourVote Campaign National

Black Voter Day on September 15" *available at* https://perma.cc/P9VJ-8CWQ. (BET partnering with Black Voters Matter to register students at Savannah State University); BVM Fund, Facebook post (Oct. 7, 2020) *available at* https://perma.cc/8M9B-9MGJ (BVM registering voters at Tuskegee University).

    **Naeva.**  Naeva is a New Mexico 501(c)(3) nonprofit dedicated to organizing and mobilizing an informed, active, and empowered Indigenous electorate. Naeva works directly with Tribal communities in New Mexico—including twenty Pueblos, the Navajo Nation, Jicarilla Apache Nation, and Mescalero Apache Tribe—to promote and protect Tribal members' right to vote and have a meaningful say in building local, statewide, and national civic agendas that include consideration of Indigenous peoples' needs.

    Naeva's mission centers Native voter education and non-partisan voter registration and outreach. To that end, Naeva engages in significant community organizing leading up to and on election day, coordinating with urban, rural, and resource-isolated Native grassroots organizers to register Native voters and facilitate their access to the ballot box.  Naeva's close partnerships with these organizers and coalitions allow them to offer community workshops and trainings on civic engagement, focused on empowering Native voters and constituents across New Mexico.

    Naeva supports Tribal voters across New Mexico and throughout the election process using broad-based community organizing and education strategies. Naeva regularly organizes Tribal communities to hold elected officials accountable and ensure their policies reflect the needs of Tribal constituents, including addressing barriers to meaningful and equitable access to the ballot box. For example, in 2023, Naeva organized to bring Tribal members before the New Mexico Legislature to offer personal, community-based testimony in support of the New Mexico Voting Rights Act. The Act, passed in 2023 and drafted in collaboration with Tribal governments,

specifically supports the rights of Tribal voters by expanding Tribes' ability to request alternate

voting sites, apply for secured ballot drop boxes, and by empowering Native voters, often lacking

a 911 address, to use designated Tribal government buildings as their voter mailing address.

## ARGUMENT

### III.   Proposed Intervenor-Defendants Are Entitled to Intervene as of Right Under Rule 24(a)(2).

Under Rule 24(a) of the Federal Rules of Civil Procedure, a non-party "is entitled to

intervention as of right if: (1) the application for intervention is timely; (2) the applicant has an

interest relating to the property or transaction which is the subject of the action; (3) the applicant

is so situated that the disposition of the action may, as a practical matter, impair or impede his

ability to protect that interest; [and] (4) the applicant's interest is inadequately represented by the

existing parties to the suit." *Rotstain v. Mendez*, 986 F.3d 931, 936–37 (5th Cir. 2021) (cleaned

up); Fed. R. Civ. P. 24(a). Although the party seeking to intervene "bears the burden of establishing

its right to intervene, Rule 24 is to be liberally construed." *Brumfield v. Dodd*, 749 F.3d 339, 341

(5th Cir. 2014). As such, "[f]ederal courts should allow intervention where no one would be hurt

and the greater justice could be attained." *La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 305

(5th Cir. 2022) (internal quotation marks omitted).

Proposed Intervenor-Defendants satisfy each of the four elements for intervention as of

right.

#### A.   Proposed Intervenor-Defendants' Motion Is Timely.

The motion to intervene is timely. The timeliness of intervention "is to be determined from

all the circumstances." *Stallworth v. Monsanto Co.*, 558 F.2d 257, 263 (5th Cir. 1977) (citation

omitted). The Fifth Circuit has articulated a four-factor test for evaluating the timeliness of a

motion to intervene: (1) the amount of time during which intervenors "actually know or reasonably

should have known of [their] interest in the case;" (2) how much prejudice existing parties may suffer as a result of intervenors' failure to request intervention "as soon as [they] knew or reasonably should have known about [their] interest in the action;" (3) the amount of prejudice that would be suffered by the intervenors if their request is denied; and (4) "the existence of unusual circumstances militating either for or against a determination that the application is timely." *Id.* at 264–66. Each *Stallworth* factor counsels in favor of intervention.

The first *Stallworth* factor examines the duration of time that intervenors "actually know or reasonably should have known of [their] interest in the case." 558 F.2d at 264. Here, minimal time has passed since Proposed Intervenor-Defendants could have possibly learned of this litigation, much less known of *their interest* in it. *See id.* at 265 (explaining that "the time that the would-be intervenor first became aware of the pendency of the case is not relevant to the issue of whether his application was timely"). The complaint was filed only about 9 weeks ago, and this case is still in its infancy. Because all named defendants are either the United States or executive branch officers sued in their official capacities, they are entitled to a longer response period and their answers are not yet due. *See* Fed. R. Civ. P. 12(a)(3). Notably, "[t]he Fifth Circuit has found motions to intervene filed both close to and longer than two months [after learning of one's interest in a matter] were timely." *La. State Conf. of NAACP v. Louisiana*, No. CV-19-479-JWD-SDJ, 2022 WL 2663850, at *6 (M.D. La. July 11, 2022); *see, e.g.*, *Ass'n of Prof. Flight Attendants v. Gibbs*, 804 F.2d 318 (5th Cir. 1986) (five-month lapse found not unreasonable).

The second and third *Stallworth* factors concern prejudice: the degree of prejudice existing parties may suffer as a result of intervenors' failure to request intervention "as soon as [they] knew or reasonably should have known about [their] interest in the action," and the amount of prejudice that would be suffered by the intervenors if their request is denied. 558 F.2d at 264–65. "In fact,

[prejudice] may well be the only significant consideration when the proposed intervenor seeks intervention of right." *McDonald v. E. J. Lavino Co.*, 430 F.2d 1065, 1073 (5th Cir. 1970). Here, the short passage of time between filing of the Amended Complaint and this motion will cause no prejudice to the existing parties. No full scheduling order has been issued, and Defendants have just filed their first pleading today. Plaintiffs' motion for a temporary restraining order, Dkt. No. 15, changes little, as Proposed Intervenor-Defendants are filing the instant motion even before the completion of the abbreviated briefing schedule for the preliminary injunction and in advance of any hearing on that motion. *Cf. Doe v. Duncanville Indep. Sch. Dist.*, 986 F.2d 953, 961 (5th Cir. 1993) (finding that filing of motion to intervene "only two days before the preliminary injunction hearing" was "not dispositive"). Moreover, the Proposed Intervenor-Defendants have not and do not seek to alter any current deadlines. *Cf. Wal-Mart Stores, Inc. v. Texas Alcoholic Beverage Comm'n*, 834 F.3d 562, 565-66 (5th Cir. 2016) (reversing district court's denial of a motion to intervene and finding the motion timely because proposed intervenor "sought intervention before discovery progressed and because it did not seek to delay or reconsider phases of the litigation that had already concluded").

Proposed Intervenor-Defendants do not intend to disturb the briefing schedule in relation to the motion for a temporary restraining order; rather they seek dismissal of this action in accordance with the Federal Rules of Civil Procedure.[2] Because intervention will not delay resolution of the litigation, intervention does not prejudice the parties and should be allowed. *Cf. Edwards v. City of Houston*, 78 F.3d 983, 1001 (5th Cir. 1996) ("[T]hat these motions were filed prior to entry of judgment favors timeliness, as most of our case law rejecting petitions for intervention as untimely concern motions filed after judgment was entered in the litigation."). By

---

[2] Pursuant to Rule 24(c), a draft of Proposed Intervenor-Defendants' responsive pleading (a Rule 12 motion) is filed as an exhibit to this motion.

contrast, Proposed Intervenor-Defendants will face substantial prejudice if they cannot intervene to protect their interests, as discussed further below.

Finally, there are no "unusual circumstances militating either for or against a determination that the application is timely." *Stallworth*, 558 F.2d at 265–66.

Accordingly, the *Stallworth* factors support a finding of timeliness.

### B.    Proposed Intervenor-Defendants Have Substantial Legal Interests in the Case.

The Proposed Intervenor-Defendants also satisfy the second requirement for intervention because they have several substantial legal interests that independently and collectively support granting their motion. The Fifth Circuit has explained that a substantial legal interest is "an interest that is concrete, personalized, and legally protectable." *Texas v. United States*, 805 F.3d 653, 658 (5th Cir. 2015). "[T]he inquiry turns on whether the intervenor has a stake in the matter that goes beyond a generalized preference that the case come out a certain way." *Id.* at 657. Moreover, because this case "involves a public interest question" and Proposed Intervenor-Defendants are "public interest group[s]," "the interest requirement may be judged by a more lenient standard" and this factor "easily supports intervention." *Brumfield*, 749 F.3d at 344 (cleaned up).

To begin, because the Amended Complaint specifically and falsely alleges that LWV and BVM engaged in partisan activity inconsistent with their tax status, they each have a substantial interest in protecting against reputational harms and even potential legal harms that could result if the Court's findings of fact were to accept the Amended Complaint's false allegations.

Section 501(c)(3) of the Internal Revenue Code provides tax exemptions for certain charitable and educational nonprofit organizations. To qualify for 501(c)(3) status, an organization

must largely refrain from engaging in partisan activities.[3] LWVEF is a 501(c)(3) organization that works to register voters and provide voters with election information through voter guides. Consistent with its organizational principles and its tax status, all of this voter registration work is completely nonpartisan. Similarly, as explained above, BVM Capacity Building Institute is a 501(c)(3) entity that is involved in BVM's voter registration work. It is vital to BVM's mission to increase voter registration and participation of *all* Black voters regardless of political affiliation, and as such BVM ensures that all its voter registration work is non-partisan.

Furthermore, Section 501(c)(4) of the Internal Revenue Code provides tax exemptions for civil leagues and social welfare nonprofit organizations. Although 501(c)(4) organizations are permitted to engage in some partisan activities, their exempt status is still tied to substantial limitations on such conduct.[4] LWVUS is 501(c)(4) organization that works to increase understanding of major public policy issues through advocacy. "The League's advocacy work is issued based": it "never derive[s] [its] positions from politicians, and even when candidates or parties support the same issue, [the League] never endorse[s] them." *See* Virginia Kase Solomón, *Remaining Nonpartisan in Hyper-Partisan Times*, LWV (Feb. 10, 2021), *available at* https://perma.cc/W7YL-YYWX. As the League's Chief Executive Officer explained, "[w]anting every eligible voter to have equal access to the ballot box is not partisan," and "[w]anting a robust democracy in which everyone has an equal voice and equal representation is not partisan." *Id.*

---

[3] *See, e.g.*, Rev. Rul. 2007-41, 2007-1 C.B. 1421 (2007). "Section 501(c)(3) organizations are permitted to conduct certain voter education activities . . . if they are carried out in a non-partisan manner," and "may encourage people to participate in the electoral process through voter registration and get-out-the-vote drives, conducted in a non-partisan manner." *Id.* "On the other hand, voter education or registration activities conducted in a biased manner that favors (or opposes) one or more candidates is prohibited." *Id.*

[4] *See, e.g.*, 26 C.F.R. § 1.501(c)(4)-1(a) (501(c)(4) organization must be "primarily engaged" in promoting social welfare, which does not include, *inter alia*, "direct or indirect participation or intervention in political campaigns on behalf of or in opposition to any candidate for public office").

The League takes steps to ensure that all its advocacy is within the limitations of its 501(c)(4) status. The League has restricted its ability to engage in partisan activities—even within the permissible confines of the Internal Revenue Code—through its bylaws. A nonprofit's bylaws are mandatory governing documents, and an organization's violation of its bylaws could subject it to serious legal consequences. The bylaws of the LWVUS stipulate that the League "shall not support or oppose any political party or candidate," and the League treats this policy as "the cornerstone of [its] voter service efforts." *See LWV Nonpartisan Policy, available at* https://perma.cc/4G2Y-K2ET ("This policy of nonpartisanship has always been a source of strength to the [League] and must be zealously guarded."). Adherence to this policy is critical to the League's national reputation as a trusted nonpartisan entity. *Id.* (explaining that a "reputation" of non-partisanship leads to "confidence" in the League's work" and thus, "it encourages all members . . . to work actively in the party of their choice").

Without any evidence, the Plaintiffs, in their Amended Complaint, falsely allege that the League and BVM engaged in activity that could violate the standards set forth in the Internal Review Code.[5] For example, they falsely allege that Intervenor-Defendants are "clearly and openly aligned with advancing the election of leftwing Democrats" and fraudulently claiming to be "nominally nonpartisan" solely to achieve "their nonprofit status." Am. Compl. ¶¶ 84 n.6; *see id.* ¶ 112. Plaintiffs also falsely and repeatedly allege that the League and BVM are "[i]deologically [p]artisan" members of a "[l]eftwing [c]oalition" seeking "[p]artisan [g]ain" by pushing the federal government to "target" voter registration efforts at people who are more likely to vote for Democratic candidates. *Id.* ¶¶ 84–85 & n.6, 112–123, 124 & n.7, 259.

---

[5] *See, e.g.*, Fed. R. Civ. P. 11(b)(3) (requiring that "contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery").

The Amended Complaint also falsely accuses Proposed Intervenor-Defendants, by name, of conspiring with the federal government to promote the Democratic Party. This accusation directly implicates multiple legally protectable interests and therefore such an allegation of partisan conspiracy strongly supports intervention as of right. *See, e.g.*, *Samsung Elecs. Co. v. Panasonic Corp.*, No. 10-CV-03098-JSW, 2016 WL 11781870, at *2 (N.D. Cal. Sept. 26, 2016) (granting intervention as of right where "[a]llegations that [proposed intervenor-defendant] conspired with Defendants pervade the [complaint]"); *cf. Skeans v. Key Com. Fin., LLC*, No. CV 18-1516-CFC-MPT, 2022 WL 605718, at *3 (D. Del. Jan. 24, 2022) (denying intervention for procedural defect but "find[ing] it fundamentally unfair and inappropriate for" a plaintiff to "identif[y]" proposed intervenor "by name in the . . . Complaint" and make "allegations about him when they did not make him a party to the action").

If the Court were to accept the Plaintiffs' allegations, and make factual findings that Proposed Intervenor-Defendants were directly engaged in partisan advocacy to support Democratic candidates, it would cause irreparable injury to Proposed Intervenor-Defendants. For one, it would damage their longstanding reputations as nonpartisan organizations (in addition to whatever damage to the League's and BVM's reputations may have already occurred given the allegations in the Amended Complaint). Such a finding could negatively impact the missions of these organizations to increase voter registration because members of the public would be less willing to trust the intentions of these organizations while doing voter registration if they believe that the organizations have ulterior motives. This would make their voter registration efforts less effective.

Additionally, this might create a potential threat of unwarranted ramifications for violating their relevant governing bylaws (despite the fact that Proposed Intervenor-Defendants have

undoubtedly not engaged in any partisan activity). *See, e.g.*, *Fulani v. League of Women Voters Educ. Fund*, 882 F.2d 621 (2d Cir. 1989) (upholding denial of motion to compel the government to revoke the League's 501(c)(3) tax-exempt status because the alleged activities at issue "did not constitute partisan activity"); *cf. Dev. Fin. Corp. v. Alpha Hous. & Health Care, Inc.*, 54 F.3d 156, 162 (3d Cir. 1995) (Plaintiff member of a nonprofit corporation permitted to intervene to protect the continued viability and tax-exempt status of the corporation); *Werner v. KPMG LLP*, 415 F. Supp. 2d 688, 704 (S.D. Tex. 2006) (explaining that when litigation "threatens . . . [a] third party's reputation," that party "may wish to consider intervening in the lawsuit as a full-fledged party").

Separate and apart from their legal and reputational interests, the Proposed Intervenor-Defendants also seek to protect their shared organizational interest in the success of the Executive Order. That interest is undeniable, as the Amended Complaint specifically alleges that the League and BVM advocated for the development of the Executive Order and its implementation. *See* Am. Compl. ¶¶ 84–85, 96, 112–25, 241–44; *Prete v. Bradbury*, 438 F.3d 949, 954 (9th Cir. 2006) ("[F]or purposes of intervention as of right, a public interest group that has supported a measure (such as an initiative) has a 'significant protectable interest' in defending the legality of the measure.").

Additionally, the Proposed Intervenor-Defendants the League, BVM, and Naeva seek to fulfill their organizational missions to increase participation in the democratic process by supporting robust voter registration efforts, including defending the Executive Order and ensuring the federal government's continued commitment to educating and assisting eligible individuals regarding voter registration. As the Fifth Circuit has repeatedly emphasized, "the burden [for intervention] is lower for a 'public interest group' raising a 'public interest question.'" *See La Union del Pueblo Entero*, 29 F.4th at 306 (quoting *Brumfield*, 749 F.3d at 344); *see also id.* at 306

16

(holding that partisan committees had satisfied interest requirement to intervene as defendants because they "expend significant resources" related to elections and "many of the claims brought by the plaintiffs could affect the Committees' ability to participate in and maintain the integrity of the election process").

The mission of the League includes "ensuring that every American can exercise their right to vote." *See*, e.g., LWV, *Expanding Voter Access*, *available at* https://www.lwv.org/voting-rights/expanding-voter-access. BVM's missions includes "increasing voter registration and turnout". *See* BVM, *Our Purpose*, *available at* https://blackvotersmatterfund.org/our-purpose/. Naeva is likewise committed to "[p]rotecting and advancing Indigenous voter access." *See* Naeva, *Our Work Includes*, *available at* https://naeva.org/.

In sum, Proposed Intervenor-Defendants have several interests that support intervention, including their interests in refuting accusations of partisanship that threaten their reputations and tax-exempt statuses and call into question compliance with their bylaws, and in advancing their organizational missions and defending the Executive Order they are accused of engineering. These legally protectable interests go far "beyond a generalized preference that the case come out a certain way." *Texas*, 805 F.3d at 657. Accordingly, Proposed Intervenor-Defendants have substantial legal interests in the outcome of this litigation and will offer a unique and important perspective on the issues before the Court.

### C.    Proposed Intervenor-Defendants' Ability to Protect Their Interests Will Be Impaired Absent Intervention.

The Proposed Intervenor-Defendants also satisfy the third requirement for intervention. Indeed, they not only meet, but far surpass, the "*minimal*" burden to show that "the disposition of the action 'may' impair or impede their ability to protect their interests." *Brumfield*, 749 F.3d at 344 & n.2 (quoting *Grutter v. Bollinger*, 188 F.3d 394, 399 (6th Cir. 1999)). Prospective

intervenors "need only show that if they cannot intervene, there is a *possibility* that their interest could be impaired or impeded." *La Union del Pueblo Entero*, 29 F.4th at 307 (emphasis added); *see Brumfield*, 749 F.3d at 344 ("The impairment requirement does not demand that the movant be bound by a possible future judgment, and the current requirement is a great liberalization of the prior rule.").

As nonparties, Proposed Intervenor-Defendants cannot protect against the legal and reputational harms that could stem from the Court crediting Plaintiffs' false allegations about their involvement in a partisan conspiracy. Granting intervention would afford the League and BVM the opportunity to seek dismissal of this action on purely legal grounds and for its failure to state a claim, thereby circumventing any need for the Court to make findings related to the Complaint's contrived allegations. Additionally, should the case proceed beyond the pleadings stage, intervention is the only option that would ensure Proposed Intervenor-Defendants could present evidence to rebut Plaintiffs' baseless accusations.

Proposed Intervenor-Defendants' interests in defending the Executive Order and in increasing access to nonpartisan voter registration opportunities will also be harmed if Plaintiffs' requested relief is granted. Specifically, Plaintiffs seek a declaration that the entire Executive Order is unlawful and ask the court to "enjoin each agency action implementing" the Executive Order. Am. Compl. at Prayer for Relief, ¶¶ (a)–(b); *see Prete*, 438 F.3d at 954 ("[A]n adverse court decision on . . . a measure [that a public interest group has supported] may, as a practical matter, impair the interest held by the public interest group."); *La Union del Pueblo Entero*, 29 F.4th at 307 (impairment requirement was met when "the outcome of this lawsuit may change what [proposed intervenors] must do to prepare for upcoming elections").

Further, Plaintiffs themselves claim that the Executive Order and challenged actions

18

"grant[] rights to [Proposed Intervenor-Defendants] . . . that could be taken away if the plaintiffs prevail," which suffices to demonstrate impairment. *La Union del Pueblo Entero*, 29 F.4th at 307. For example, the Amended Complaint claims that the League has been partnering with the Bureau of Prisons to improve access to voter registration for "eligible people in federal prisons," including "helping the prison agency to distribute an informational voting video" and develop a "civics education class and voter registration drives" at certain facilities. Am. Compl. ¶¶ 240–44.  This work by the Bureau of Prisons to improve access to voter registration opportunities is vital to the missions of the League and BVM to increase voter registration and participation of all eligible U.S. citizens.

Additionally, pursuant to the EO, the General Service Administration ("GSA") is working on a "user-friendly portal for Americans to find the information they need most to register and vote." Am. Compl. ¶ 188. And the Amended Complaint asserts that numerous federal agencies have been taking steps to promote Vote.gov to the general public as a method of voter registration. *See, e.g.*, Am. Compl. ¶¶ 173, 266, 277, 280.  These improvements to Vote.gov and better access to an improved system are vital to the organizational missions of BVM and the League of increasing voter registration. An injunction preventing this work would damage the missions of BVM and the League, because these opportunities making voter registration easier and more expansive would no longer exist.

Additionally, both the League and BVM have included students as a focus of their voter registration work. As alleged in the Amended Complaint, the Department of Education has released a toolkit promoting voter participation that focuses on the promotion of voter participation for students in postsecondary and secondary institutions. Am. Compl. ¶¶ 154–55. A ruling in this case enjoining this work by the Department of Education would impair the goals and missions of

the League and BVM to increase the voter registration of students.

Moreover, as the Amended Complaint asserts, under the EO steps have been taken and will be taken to increase access to voter registration opportunities for Native Americans. "The Indian Health Service designated an Arizona-based facility as an official voter registration hub. Four more IHS facilities are set to be designated by the end of the year." Am. Compl. ¶ 199. Naeva's mission to increase non-partisan voter registration of Native Americans is helped by these efforts, and that mission would be impaired if these efforts were stopped.

Plaintiffs' requested relief would necessarily impair the organizational missions of all the Proposed Defendant-Intervenors. As such, Plaintiffs' claims, if granted, "may impair or impede [Proposed Intervenor-Defendants'] ability to protect their interests.'" *See Brumfeld*, 749 F.3d at 344.[6]

### D.   Defendants Inadequately Represent Proposed Intervenor-Defendants' Interests.

Finally, Proposed Intervenor-Defendants' interests are not adequately represented by Defendants. A proposed intervenor need not show that the representation by existing parties *will* be inadequate. *Entergy Gulf States La.*, *L.L.C. v. U.S. E.P.A.*, 817 F.3d 198, 203 (5th Cir. 2016). All that is required is the "minimal" burden of showing that the representation "*may* be"

---

[6] Additionally, all Proposed Intervenor-Defendant actively engage in voter registration efforts, but they focus resources on voter registration in areas where there are no other voter registration opportunities. If the voter registration opportunities that are being offered and will be offered by federal agencies pursuant to the EO are enjoined, the Defendant-Intervenors will be required to divert their resources from other areas to provide voter registration opportunities to U.S. citizens no longer being offered registration opportunities by the federal government.   Proposed Intervenor-Defendants thus "satisf[y] the impairment requirement" because they "will have to expend resources to educate their members" and volunteers who conduct their voter registration activity "on the shifting situation in the lead-up to the [2024] election." *La Union del Pueblo Entero*, 29 F.4th at 307.

inadequate. *Ross v. Marshall*, 426 F.3d 745, 761 (5th Cir. 2005); *see Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972) (same). Here, Proposed Intervenor-Defendants easily meet this minimal burden, as multiple factors point to a potential divergence in interests and thus inadequacy of representation.

Although the Fifth Circuit recognizes "two presumptions of adequate representation," *Brumfield*, 749 F.3d at 345, those presumptions only apply under limited circumstances and neither precludes intervention here. The Fifth Circuit has described the first presumption as arising "when the intervenor 'has the same ultimate objective as a party to the lawsuit.'" *La Union del Pueblo Entero*, 29 F.4th at 308 & n.6 (quoting *Texas*, 805 F.3d at 661–62). However, the Supreme Court recently clarified that "[w]here 'the absentee's interest is similar to, but not identical with, that of one of the parties,' that normally is not enough to trigger a presumption of adequate representation." *Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 196–97 (2022) (quoting 7C C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 1909 (3d ed. Supp. 2022)); *see La Union del Pueblo Entero*, 29 F.4th at 308 (presumption does not apply when an intervenor's "interests diverge from the putative representative's interests in a manner germane to the case"); *see also, e.g.*, *Kane Cnty., Utah v. United States*, 94 F.4th 1017, 1030 (10th Cir. 2024) (under *Berger*, "this presumption applies only when interests overlap fully" and expressing doubt that the government "can 'adequately represent the interests of a private intervenor *and* the interests of the public'"). The second presumption applies when the existing party "'is a governmental body or officer charged by law with representing the interests' of the intervenor, which can be overcome by showing that the intervenor's 'interest is in fact different from that of the' governmental party 'and that the interest will not be represented by' the existing governmental party." *Id.* (citing *W. Energy All. v. Zinke*, 877 F.3d 1157, 1168 (10th Cir. 2017)).

21

Both presumptions are easily overcome here. The named federal Defendants have neither an interest in nor an obligation to contest factual allegations that pose legal and reputational threats to Proposed Intervenor-Defendants' nonprofit statuses. This alone demonstrates the inadequacy of representation by existing parties.

The federal Defendants also may fail to adequately represent Proposed Intervenor-Defendants' other interests. Although Defendants and Proposed Intervenor-Defendants may both generally seek to defend the legality of the Executive Order and its implementation, "there are reasons to believe [Proposed Intervenor-Defendants'] interests are less broad than those of the governmental defendants, which *may* lead to divergent results." *La Union del Pueblo Entero*, 29 F.4th at 308. As government officials, defendants "must represent the broad public interest," and will face institutional constraints that may lead them to prioritize defending agencies against allegations of impropriety. *Sierra Club v. Glickman*, 82 F.3d 106, 110 (5th Cir. 1996) (internal quotation marks omitted). The League, BVM, and Naeva have "more flexibility" to advocate for their narrower interest in promoting expansive voter registration opportunities and defending the results of their advocacy efforts. *Id.*; *see, e.g.*, *Doe No. 1 v. Glickman*, 256 F.3d 371, 381 (5th Cir. 2001) (contrasting agency's broad interest in representing the public against advocacy organization intervenor's more narrow concerns). Nor do government defendants share Proposed Intervenor-Defendants' specific concerns related to the impact of enjoining each agency action implementing the EO on their voter registration and voter education work. *See La Union del Pueblo Entero*, 29 F.4th at 309 (concluding that intervenors' "private interests are different in kind from the public interests of the State or its officials" when those "interests primarily rely on the expenditure of their resources to equip and educate their members . . . and volunteers who participate in the election").

The government "has many interests in this case" that contrast with the specific interests of Proposed Intervenor-Defendants; while one "cannot say for sure that the state's more extensive interests will *in fact* result in inadequate representation, . . . surely they might, which is all that the rule requires." *Brumfield*, 749 F.3d at 346.

*        *        *

For all these reasons, the Court should conclude that Proposed Intervenor-Defendants are entitled to intervention as of right under Rule 24(a).

## IV.    Alternatively, Proposed Intervenor-Defendants Should Be Granted Permissive Intervention Under Rule 24(b).

Although Proposed Intervenor-Defendants have satisfied the requirements of intervention as of right under Rule 24(a), they also satisfy the requirements for permissive intervention under Rule 24(b).

Under Rule 24(b), the Court may permit intervention by a proposed intervenor who files a timely motion and "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B); *see United States ex rel Hernandez v. Team Fin., L.L.C.*, 80 F.4th 571, 577 (5th Cir. 2023) ("The 'claim or defense' portion of Rule 24(b) is to be construed liberally.") (cleaned up). Courts also consider whether permissive intervention "will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). "In acting on a request for permissive intervention, it is proper to consider, among other things, whether the intervenors' interests are adequately represented by other parties and whether they will significantly contribute to full development of the underlying factual issues in the suit." *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 472 (5th Cir. 1984) (en banc) (internal quotation marks omitted).

Most of the relevant factors have been addressed above: This motion is timely, *see*

23

*Hernandez*, 80 F.4th at 578 (explaining that the *Stallworth* factors also apply in the context of permissive intervention), and permitting intervention would not prejudice the original parties. Only one set of deadlines other than those in the Federal Rules of Civil Procedure have been set since the original complaint was filed, and Proposed Intervenor-Defendants have moved promptly and have a strong incentive to seek an expeditious dismissal of this case. Additionally, Proposed Intervenor-Defendants' interests are not adequately represented by the original parties, and they bring unique factual knowledge related to the misleading allegations in the Amended Complaint, along with substantial voting rights expertise, and specifically expertise about voter registration, that will "significantly contribute to full development of the underlying factual issues in the suit." *United Gas Pipe Line Co.*, 732 F.2d at 472. In particular, Proposed Intervenor-Defendants can present important evidence in defending the legality of the Executive Order and its implementation by federal agencies, including evidence that disputes Plaintiffs' misstatements of fact and flawed interpretations of federal law. Resolution of these questions is central to both the original parties' dispute and Proposed Intervenor-Defendants' claims.

Accordingly, the Court should grant Proposed Intervenor-Defendants permissive intervention under Rule 24(b).

## CONCLUSION

For the foregoing reasons, the Court should grant the Proposed Intervenor-Defendants' motion.

Dated: September 14, 2024                    Respectfully Submitted,


Ryan Patrick Brown                           /s/ *Edgar Saldivar*
TX Bar No. 24073967                          Edgar Saldivar
Ryan Brown, Attorney at Law, P.L.L.C.        TX Bar No. 24038188
1222 S Fillmore St.                          Thomas Buser-Clancy*
Amarillo, TX 79101                           TX Bar No. 24078344
(806) 372-5711                               Ashley Harris*

info@ryanbrownattorneyatlaw.com

John A. Freedman*
Samuel D. Kleinman*
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave. NW
Washington, DC 20001
(202) 942-5000
john.freedman@arnoldporter.com
sam.kleinman@arnoldporter.com

Niyati Shah*
Noah Baron*
Alizeh Ahmad*
ASIAN AMERICANS ADVANCING
JUSTICE-AAJC
1620 L Street, NW, Suite 1050
Washington, DC 20036
(202) 296-2300
nshah@advancingjustice-aajc.org
nbaron@advancingjustice-aajc.org
aahmad@advancingjustice-aajc.org

Rose Murray*
Ahmed Soussi*
SOUTHERN POVERTY LAW CENTER
201 Saint Charles Ave., Suite 2000
New Orleans, Louisiana 70170
(504) 579-3175
rose.murray@splcenter.org
ahmed.soussi@splcenter.org

TX Bar No. 24123238
Adriana Piñon*
TX Bar No. 24089768
ACLU FOUNDATION OF TEXAS, INC.
1018 Preston St.
Houston, TX 77002
(713) 942-8146
esaldivar@aclutx.org
tbuser-clancy@aclutx.org
aharris@aclutx.org
apinon@aclutx.org

Sarah Brannon*
Jacob van Leer*
Voting Rights Project
ACLU FOUNDATION
915 15th St. NW
Washington, DC 20005
(202) 210-7287
sbrannon@aclu.org
jvanleer@aclu.org

Sophia Larkin*
Voting Rights Project
ACLU FOUNDATION
125 Broad St.
New York, NY 10004
SLarkin@aclu.org

Ming Cheung*
Voting Rights Project
ACLU FOUNDATION
125 Broad St.
New York, NY 10004
MCheung@aclu.org

Leah J. Tulin*
BRENNAN CENTER FOR JUSTICE AT
NYU SCHOOL OF LAW
1140 Connecticut Ave. NW, Suite 1150
Washington, DC 20036
(202) 650-6397
tulinl@brennan.law.nyu.edu

Lauren Miller Karalunas*

25

BRENNAN CENTER FOR JUSTICE AT
NYU SCHOOL OF LAW
120 Broadway, Suite 1750
New York, NY 10271
(646) 292-8310
millerl@brennan.law.nyu.edu

*Attorneys for League of Women Voters and Black Voters Matter*

Jacqueline D. De León*
Allison A. Neswood*
NATIVE AMERICAN RIGHTS FUND
250 Arapahoe Ave.
Boulder, CO 80302
(303) 447-8760
jdeleon@narf.org
neswood@narf.org

Samantha B. Kelty*
TX Bar No. 24085074
NATIVE AMERICAN RIGHTS FUND
950 F St. NW, Suite 1050,
Washington, DC 20004
(202) 785-4166
kelty@narf.org

*Attorneys for Naeva*

*Application for Admission Pro Hac Vice Forthcoming

26

**CERTIFICATE OF SERVICE**

I certify that on September 14, 2024 the foregoing document was filed on the Court's

CM/ECF system which sent notification of such filing to all counsel of record.


/s/ *Edgar Saldivar*
Edgar Saldivar

*Counsel for Proposed Intervenor-Defendants*

27