**THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**AMARILLO DIVISION**

| | | |
|---|---|---|
| AMERICA FIRST POLICY INSTITUTE, *et al.*, | § | |
| | § | |
| | § | |
| *Plaintiffs,* | § | |
| v. | § | Civil Action No.: 2:24-cv-00152-Z |
| | § | |
| JOSEPH R. BIDEN, JR., in his official capacity | § | |
| as President of the United States, *et al.*, | § | |
| | § | |
| *Defendants.* | § | |
| | § | |

**PLAINTIFFS' REPLY IN SUPPORT OF TEMPORARY RESTRAINING ORDER**
**AND PRELIMINARY INJUNCTION**

I.    **PLAINTIFFS ARE SUFFERING IRREPARABLE HARM AND ARE AT SUBSTANTIAL RISK OF IMMINENT ADDITIONAL HARM.**

Plaintiffs have suffered injuries-in-fact from Defendants' unlawful registration efforts, and also irreparable harm, and Plaintiffs are at significant risk of imminent additional harm from get-out-the-vote (GOTV) efforts beginning on September 16.[1]  For a TRO or PI, Plaintiffs must show "that each element of standing is likely to obtain."  *Speech First, Inc. v. Fenves*, 979 F.3d 319, 329–30 (5th Cir. 2020).[2]  Plaintiffs are asserting four theories of actual or imminent harm recognized by precedent, not generalized grievances.  *Contra* MTD at 20–21.   Election administrators are suffering a drain on their resources.  *See Liberty Univ., Inc. v. Lew*, 733 F.3d 72, 89–90 (4th Cir. 2013); *Texas v. United States*, 809 F.3d 134, 155–56 (5th Cir. 2015), *aff'd by an equally divided Court*, 579 U.S. 547, 548 (2016) (mem.).  Defendants' actions do not "change" the way these Plaintiffs act, *contra* MTD 19–20, it imposes a burden of added cost and effort to those actions.[3]  The political parties are suffering a competitive disadvantage.  *Tex. Democratic Party v. Benkiser*, 459 F.3d 582, 586–87 (5th Cir. 2006).  Political candidates are injured under the same theory.  *Nelson v. Warner*, 12 F.4th 376, 385 (4th Cir. 2021); *cf. Louisiana v. U.S. Dep't*

---

[1] This Court should not definitively rule on standing until the Motion to Dismiss (MTD) has been fully briefed and argued.  At the preliminary injunction (PI) stage, it is enough that Plaintiffs have shown a substantial likelihood of establishing standing, and at the temporary restraining order (TRO) stage, it is enough that Plaintiffs have made enough of a showing on papers that the Court concludes that once a hearing is held, the Plaintiffs will likely meet the substantial-likelihood threshold.  Plaintiffs will timely file a 25-page brief in opposition to the part of ECF No. 25 that is an MTD, but briefly respond here to the extent aspects of those points are needed to secure a TRO and PI, in support Plaintiffs' Motion for a PI and TRO (MPI), ECF No. 16.  Elements of standing must be supported "with the manner and degree of evidence required at the successive stages of litigation."  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).  Plaintiffs' will fully respond to the MTD in their forthcoming opposition brief to Defendants' MTD.

[2] The showing required for standing is thus less stringent at this early stage of litigation.  *See In re Deepwater Horizon*, 739 F.3d 790, 799–800 (5th Cir. 2014) (citation omitted).

[3] Plaintiffs will fully discuss the economic costs related to these harms in their MTD brief.

Case 2:24-cv-00152-Z   Document 38   Filed 09/15/24   Page 3 of 12   PageID 1186

*of Energy*, 90 F.4th 461, 467–68 (5th Cir. 2024).[4]  And States are injured by federal actions not sanctioned by the Constitution or federal statute that undermine election integrity and orderly elections.  *See* MPI 46, ECF No. 16 (citing both controlling and persuasive cases).  For each Plaintiff, Defendants' actions either affect their duties or harm their cognizable interests. Plaintiffs' theories of standing based on binding precedent are unmarred by Defendants' arguments, which are based on noncontrolling cases.  Rather than claims of future injury that are wildly speculative and not fairly traceable to the actions in question, *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 401–02 (2013), these are actions with a discernable path to likely causing current and future injury to these Plaintiffs, *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014), whereby "third parties will likely react in predictable ways," *Dep't of Com. v. New York*, 588 U.S. 752, 768 (2019); *see, e.g.*, *Texas v. United States*, 86 F. Supp. 3d 591, 611 (S.D. Tex. 2015) (third party illegal aliens still needed to apply for DAPA to change their immigration status), *aff'd*, 809 F.3d 134.

The Center for Technology and Civil Life's (CTCL) actions in Atlanta did indeed generate higher Democratic turnout, easily sufficient to swing that Georgia into the Democratic column. MPI 33; *contra* MTD 18.  Defendants wrongly argue such effects are not irreparable harms.  The reason Plaintiffs present no historical data, MTD 15–18, is because the Federal Government has never previously tried to implement something like Zuckbucks.  Defendants do not get a free bite at the apple to attempt to change the outcome of races in 2024 through Zuckbucks-type programmatic actions before Plaintiffs have standing to challenge Defendants' unlawful actions. Defendants' point that Plaintiffs cite to no case that specifically holds that agency actions like these

---

[4] *Keefer v. Biden*, 1:24-CV-00147, 2024 WL 1285538 (M.D. Pa. Mar. 26, 2024), is of no moment in any event, as the district court dismissed the candidacy argument there because the plaintiffs did not develop that point, making only a "vague, generalized allegation."  *Id.* at *10.

violate constitutional rights, MTD 39, is in part because the Federal Government has never done this before.  However, the Fifth Circuit has held that the violation of *any* constitutional right is irreparable harm.  *BST Holdings, LLC v. OSHA*, 17 F.4th 604, 618 & n.21 (5th Cir. 2021).

> And contrary to Defendant's argument, MTD 26, Plaintiffs' arguments here constitute a
>
> typical APA suit.  An unregulated plaintiff such as [Plaintiffs] often will sue under the APA to challenge an allegedly unlawful agency [action] that regulates others but also has adverse downstream effects on the plaintiff… the unregulated plaintiff can obtain meaningful relief only if the APA authorizes vacatur of the agency [action], thereby remedying the adverse downstream effects of the rule on the unregulated plaintiff….  [5 U.S.C.] § 706(2) [authorizes] vacatur of unlawful agency [actions], including in suits by unregulated plaintiffs who are adversely affected by an agency's regulation of others.

*Corner Post, Inc. v. Bd. of Governors of Fed. Res. Sys.*, 144 S. Ct. 2440, 2460 (2024) (Kavanaugh, J., concurring).  Plaintiffs' opening brief thus shows both ongoing and future harms.  MPI 43–46.

## II.   PLAINTIFFS ARE CHALLENGING FINAL AGENCY ACTIONS.

Final agency actions mark "the consummation of the agency's decisionmaking process … by which rights or obligations have been determined, or from which legal consequences will flow," a test applied with a "flexible" and "pragmatic approach" when finding finality.  *Texas v. EEOC*, 933 F.3d 433, 441 (5th Cir. 2019) (cleaned up).  MPI 8.  Each final action need not be:

> the culmination of lengthy administrative proceedings.  It need only be an agency decision which imposes an obligation, denies a right, or fixes some legal relationship.  If [it] … has a direct and immediate effect on the day-to-day business of the party asserting wrongdoing, and envisions immediate compliance with its terms, the order has sufficient finality ….  [T]he consequences [must be] sufficiently concrete and definite to warrant review.

*Atorie Air, Inc. v. FAA*, 942 F.2d 954, 960 (5th Cir. 1991).  Final actions come in various forms. *See Texas v. Cardona*, __ F. Supp. 3d __, 2024 WL 3658767, at *6 n.44 (N.D. Tex. 2024); *accord* 2024 WL 2947022, at *7–10.  They "may result from a series of agency pronouncements rather than a single edict." *Barrick Goldstrike Mines Inc. v. Browner*, 215 F.3d 45, 48–49 (D.C. Cir. 2000) (cleaned up).  "[S]keletal" agency explanations can be final with "accompanying

explanatory correspondence." *Alaska Dep't of Env't Conservation v. EPA*, 540 U.S. 461, 497 (2004). Cases interpret "final agency action" expansively, including the decision to add a question to a government form, *New York*, 588 U.S. at 767, policy statements, guidance documents, and enforcement discretion documents, *see Texas v. Biden*, 10 F.4th 538, 550 (5th Cir. 2021); *Texas*, 933 F.3d at 443; *Texas*, 809 F.3d at 172–73. Final action can also be indirect regulation, such as language to federal funding recipients from which they could infer that disagreement would jeopardize funding, *see, e.g., Frozen Foods Express v. United States*, 351 U.S. 40, 44–45 (1956);[5] *see also Gen. Elec. Co. v. EPA*, 290 F.3d 377, 383 (D.C. Cir. 2002). Courts thus do not elevate form over substance. *See, e.g.*, *Ciba-Geigy Corp. v. EPA*, 801 F.2d 430, 438 n.9 (D.C. Cir. 1986).

Many of the EO's implementing actions described in the Complaint and discussed in the MPI are thus final agency actions under the APA, subject to judicial review. *Contra* MTD 21; *see, e.g.*, 1st Am. Compl., ECF 11 ¶¶ 155, 174, 177, 178, 190, 199, 206, 213, 218, 232, 239, 245, 274, 286, 291. Those actions have a substantial impact on private interests, directly or indirectly imposing obligations on those receiving these directions and instructions, modifying the legal rights (i.e., to vote) of the persons agencies deal with directly or through instrumentalities (like colleges), from which legal consequences flow. These are discrete acts of attempting to register voters and engage in GOTV. *Contra* MTD 22. They are the specific acts enumerated in the First Amended Complaint, plus whatever undisclosed acts of a similar nature Defendants are unlawfully concealing from Congress and the public. And yes, Plaintiffs do indeed seek to enjoin, and later vacate, every final agency action implementing the EO. *See* MTD 23. The EO orders "each agency" to do so, EO § 3(a), necessitating a proportionate injunction.

---

[5] *Contra* MTD 28 (citing D.C. Circuit case that is inapposite because no funding was at issue).

**III.    PLAINTIFFS ARE STILL SUBSTANTIALLY LIKELY TO SUCCEED ON THE MERITS.**

Defendants effectively concede Plaintiffs' federalism and major questions arguments, not rebutting Plaintiffs that a clear-statement rule applies to these programmatic actions, that the NVRA does not clearly state that federal agencies can implement nationwide voter registration drives or GOTV programs, and that these actions have federalism implications and pose a question of vast political significance. *See* MTD 29–30. Not a word of counterargument regarding the NVRA's text, despite having 50 pages for briefing. A PI should issue on that basis alone.

So too with notice and comment, MPI 16–25. Defendants do not explain how these actions do not have a substantial impact on private interests, *see Ayolles*, 715 F.2d at 908, when they involve over 1 million housing units, over 2,000 transit system, over 20 million subsidized insurance recipients, and close to 1 million immigrants per year, as well as every college that takes federal funding, to name but a few. What little Defendants say is counterfactual, including on that last issue that the Education Department (ED) merely "advises" schools regarding the EO, MTD 26–27, when to the contrary federal dollars are being spent in programmatic fashion to pay students to register voters, which is the epitome of impacting rights, and pressure schools regarding their "obligation," MPI 28.[6] These actions clearly "affect individual rights and obligations." *Tex. Sav. & Cmty. Bankers Ass'n v. Fed. Hous. Fin. Bd.*, 201 F.3d 551, 556 (5th Cir. 2000).[7]

The same goes for arbitrary and capricious. *See* MPI 25–36. Defendants discount (without denying) the public reporting that the EO is designed to increase turnout among key voting blocs, MTD 31. Defendants pan the many cites showing that the private individuals served by these

---

[6] As noted above, *supra* 5 & n.5, communications to funding recipients are final agency actions if a recipient could infer that noncompliance might jeopardize funding, such as "advising" recipients regarding their "obligations."

[7] Plaintiffs do not suggest that filing a statement of interest in litigation is a substantive rule under the APA. *Contra* MTD 35.

government actions vote heavily Democratic, but do not provide counterevidence, dismissing as "broad-brush characterizations," MTD 14, the inescapable fact that those blocs *in particular* that mostly vote Democrat will—by definition—cast more votes for Democrats than Republicans, and in doing so increase Democrats' relevant vote totals in whatever races are at issue. Should the Court schedule a PI hearing, Plaintiffs can elaborate on this argument.

So too with part of Plaintiffs' argument that these actions are not in accordance with law, specifically the paid voter registration drives on campus. Plaintiffs' assert how this violates Title 20 of the United States Code regarding Federal Work Study programs, including how those provisions have been interpreted in regulations issued by ED. *See* MPI 36. Plaintiffs do not explain how such activities and payments are consistent with law. *See* MTD 30.

Relatedly, Defendants do not respond to Plaintiffs' specific instances of Anti-Deficiency Act (ADA) violations. *See* MPI 40–42.[8] The ADA "prohibits expenditures in excess of appropriations." *Air Prods. & Chems., Inc. v. Gen. Servs. Admin.*, 700 F. Supp. 3d 487, 506 (N.D. Tex. 2023). Though it is clear that the ADA itself "does not provide for a private right of action," Plaintiffs "may complain of a violation of the statute" through the APA. *Utah Ass'n of Cntys. v. Bush*, 316 F. Supp. 2d 1172, 1184 (D. Utah 2004) (cleaned up); *see also S. Packaging & Storage Co. v. United States*, 588 F. Supp. 532, 544, 549–50 (D.S.C. 1984) (entertaining plaintiff's claim of ADA violation in an APA suit).

Finally, Plaintiffs' *ultra vires* claim has merit. *See* MPI 42–43. Defendants respond with bland generalizations about the uncontested fact that the President is in charge of the Executive

---

[8] To clarify, Plaintiffs do not contest federal employees being able to take administrative time to vote under policies that preexisted the EO, and Plaintiffs have repeatedly disclaimed questioning Department of Defense (DOD) policies that predate the EO. And as Defendants note, *see* MTD 32, there is a statute specific to DOD regarding voting, which provides a source of statutory authority not at issue here. Plaintiffs disclaim seeking any relief against DOD in the MPI.

Branch.  *See* MTD 35–37.  That does not refute Plaintiffs' presentation.  Contrary to Defendants'
argument, MTD 37, the President cannot direct the entire machinery of the Federal Government
to register voters and engage in GOTV under the auspices of "properly supervis[ing] and
guid[ing]" federal employees.  *Myers v. United States*, 272 U.S. 52, 135 (1926).  The President
has no authority to issue this EO.  Voter registration is an area left to the States unless Congress
decides otherwise through clear statutory language authorizing agency action.  *Contra* MTD 39.

## IV.   DEFENDANTS' REMAINING POINTS ARE LIKEWISE MERITLESS.

So too, Defendants' remaining points lack merit.  Defendants make a critical concession
by admitting that "for many agencies, the majority of the proposed actions described in their
strategic plans have not been implemented whatsoever."  MTD 25 (cleaned up).  That is precisely
why Plaintiffs seek a TRO by September 16, when agency GOTV activities would begin, to
prevent those harms.  Defendants shockingly assert presidential communications privilege against
disclosure, brazenly asserting that the strategic plans are mere recommendations to inform the
President's decisionmaking, *id.*, which are post hoc rationalizations offered during litigation, *see
id.*, and contrary to the EO's text for agencies to submit a "strategic plan" of what the agency
intends to do, not recommendations.  *See* EO § 3(b).  Equally telling, Defendants *never deny*
Plaintiffs' allegations that Defendants are poised to engage in government-wide GOTV efforts
similar to the GOTV activities in Zuckbucks.

There are no "prohibitively inconvenient" barriers to voting here, MTD 42, so this EO
cannot be a response to that.  Neither does *Purcell v. Gonzales*, 549 U.S. 1 (2006) (per curiam),
apply here.  That is simply a red herring.  That case pertains to suits in federal courts seeking to
change the rules being administered by States during an election.  *See id.* at 2–5.  This lawsuit does

not seek to change States' administration of their election rules, so there is no risk of voter confusion.

The timing of Plaintiffs' suit and preliminary injunction motion are not problematic.  A "long delay" in seeking relief might undermine a request for an injunction, 11A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRAC. & PROC. § 2948.1, but only "[a]bsent a good explanation."  *VanDerStok v. Garland*, 625 F. Supp. 3d 570, 584 (N.D. Tex. 2022), *opinion clarified*, No. 4:22-CV-00691-O, 2022 WL 6081194 (N.D. Tex. Sept. 26, 2022).  One reason for excusable delay is when Plaintiffs are investigating facts to accumulate evidence.  *See, e.g.*, *BP Chemicals Ltd. v. Formosa Chem. & Fibre Corp.*, 229 F.3d 254, 264 (3d Cir. 2000).  And a two-month delay is not a longer delay than this court has found acceptable. *See, e.g.*, *Vanderstok*, 625 F. Supp. 3d at. 585.  That is precisely what happened here.  *See* D'Andrea Dec., Krause Dec., Loudermilk Dec., ECF 36-2.  Plaintiffs have been diligent in seeking this evidence, and continue to do so.

Again, an adverse evidentiary inference is warranted here, similar to spoliation.  *See* MPI 48–49.  Defendants assert the "presidential communications privilege," MTD 5–6, but do not set forth that doctrine or explain why it applies to these facts.  Defendants' assertion is specious.  This Court should respond to their failure to justify withholding information from compulsory production by drawing a negative inference here that the withheld documents would support Plaintiffs' claims, and order full briefing and possibly a hearing, so that the Court is fully advised to rule on the applicability of the privilege.  Then Defendants unlawfully refused to disclose a comprehensive list of those actions, and fault Plaintiffs for not specifying these hidden facts.  *See* MTD 24.  Plaintiffs will present in greater detail as the case goes on Defendants' unlawful withholding of necessary documents.  In the meantime, at this pleadings stage, "general factual

allegations" suffice, and this Court should presume they "embrace those specific facts" that can later be discovered. *Lujan*, 504 U.S. at 561.

Defendants object to a nationwide injunction, *see* MTD 44, but do not refute Plaintiffs' presentation. MPI 48–50. With nationwide agencies acting nationwide, and without evidence at this point as to which efforts cross State lines, there is a concern that a geographically limited injunction would not prevent these harms.

## CONCLUSION

For these reasons and those in Plaintiffs' opening brief, the Court should issue the temporary restraining order and preliminary injunction.

September 15, 2024

Respectfully submitted,

*/s/ Kenneth A. Klukowski*
H. CHRISTOPHER BARTOLOMUCCI*
D.C. Bar No. 453423
KENNETH A. KLUKOWSKI
D.C. Bar No. 1046093
JUSTIN A. MILLER
Tex. Bar No. 24116768
SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
Telephone: (202) 787-1060
Facsimile: (202) 776-0136
kklukowski@schaerr-jaffe.com

JESSICA HART STEINMANN
Tex. Bar No. 24067647
MICHAEL D. BERRY
Tex. Bar No. 24085835
AMERICA FIRST POLICY INSTITUTE
1635 Rogers Road
Fort Worth, TX 76107
Telephone: (571) 348-1802

*Admitted *pro hac vice*

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

On September 15, 2024, the foregoing document was filed with the Clerk of Court for the United States District Court, Northern District of Texas using the Court's CM/EC system.  I hereby certify that I have served the document on all counsel of record by manner authorized by Federal Rule of Civil Procedure 5(b)(2) (ECF system).

*/s/ Kenneth A. Klukowski*
Kenneth A. Klukowski
*Counsel for Plaintiffs*