**THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**AMARILLO DIVISION**

| | | |
|---|---|---|
| AMERICA FIRST POLICY INSTITUTE, *et al.*, | § | |
| | § | |
| | § | |
| *Plaintiffs,* | § | |
| v. | § | Civil Action No.: 2:24-cv-00152-Z |
| | § | |
| JOSEPH R. BIDEN, JR., in his official capacity | § | |
| as President of the United States, *et al.*, | § | |
| | § | |
| *Defendants.* | § | |
| | § | |

**PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES..................................................................................................iii

INTRODUCTION AND SUMMARY OF ARGUMENT..................................................1

ARGUMENT...........................................................................................................................3

    I.     PLAINTIFFS HAVE STANDING. ......................................................................3

          A.     Defendants' actions implementing the EO are injuring Plaintiffs...........5

               1.     The actions unlawfully consume election administrators' resources. ......................................................................................6

               2.     The actions competitively disadvantage political parties and candidates.............................................................................7

               3.     States have interest in elections and risk loss of federal funding for noncompliance with the EO. ..................................11

               4.     Plaintiffs' injuries require only likely contributing factors, not but-for causation. ...................................................13

          B.     The actions are final agency actions.....................................................15

          C.     Plaintiffs' injuries are fairly traceable and redressable.........................18

    II.     THIS COURT SHOULD DRAW AN ADVERSE EVIDENTIARY INFERENCE AGAINST DEFENDANTS. ....................................................................................18

          A.     Defendants are unlawfully withholding relevant evidence. ..................18

          B.     The withheld evidence is not protected by the presidential communications privilege.........................................................................20

    III.    ALTERNATIVELY, THIS COURT SHOULD DEFER RULING ON THE MOTION TO DISMISS TO ALLOW PLAINTIFFS TO ENGAGE IN JURISDICTIONAL DISCOVERY.......................................................................................................21

CONCLUSION ...................................................................................................................24

# TABLE OF AUTHORITIES

**Cases**

*Alaska Dep't of Env't Conserv. v. EPA*,
  540 U.S. 461 (2004)...................................................................................16

*Alpine View Co. v. Atlas Copco AB*,
  205 F.3d 208 (5th Cir. 2000) ....................................................................21

*Ariz. State Leg. v. Ariz. Indep. Redistricting Comm'n*,
  576 U.S. 787 (2015).....................................................................................6

*Arthur H. Richland Co. v. Harper*,
  302 F.2d 324 (5th Cir. 1962) ......................................................................4

*Atorie Air, Inc. v. FAA*,
  942 F.2d 954 (5th Cir. 1991) ....................................................................16

*Barrick Goldstrike Mines Inc. v. Browner*,
  215 F.3d 45 (D.C. Cir. 2000)....................................................................16

*Benchmark Elecs., Inc. v. J.M. Huber Corp.*,
  343 F.3d 719 (5th Cir.) ...............................................................................5

*Brandt Eng'rs Grp. Ltd. v. Roberts*,
  No. 2:19-CV-00051-Z-BP, 2019 WL 13193885
  (N.D. Tex. Dec. 6, 2019) ............................................................................5

*Carey v. Piphus*,
  435 U.S. 247 (1978)...................................................................................10

*Ciba-Geigy Corp. v. EPA*,
  801 F.2d 430 (D.C. Cir. 1986)..................................................................16

*Clinton v. City of New York*,
  524 U.S. 417 (1998).....................................................................................8

*Contender Farms, LLP v. USDA*,
  779 F.3d 258 (5th Cir. 2015) ....................................................................13

*Corner Post, Inc. v. Bd. of Governors of Fed. Res. Sys.*,
  144 S. Ct. 2440 (2024)......................................................................8, 9, 11

*Crawford v. Marion Cnty. Election Bd.*,
  472 F.3d 949 (7th Cir. 2007) ................................................................9, 13

*Ctr. for Effective Gov't v. U.S. Dep't of State*,
  7 F. Supp. 3d 16 (D.D.C. 2013) ...............................................................20

*Davila v. United States*, 713 F.3d 248 (5th Cir. 2013)......................................................22

*Delta Electronics, Inc. v. Vicor Corp.*,
    -- F.Supp.3d --, 2024 WL 1200328 (W.D. Tex. 2024)................................................22

*Dem. Exec. Comm. of Fla. v. Nat'l Repub. Sen. Comm.*,
    950 F.3d 790 (11th Cir. 2020) ...................................................................................14

*Dews v. Town of Sunnyvale*,
    109 F. Supp. 2d 526 (N.D. Tex. 2000) ......................................................................14

*Farace v. Indep. Fire Ins. Co.*,
    699 F.2d 204 (5th Cir. 1983) .....................................................................................19

*Fielding v. Hubert Burda Media, Inc.*,
    415 F.3d 419 (5th Cir. 2005) .....................................................................................22

*Fisher v. Univ. of Tex. at Austin*,
    570 U.S. 297 (2013) (No. 11-345)..............................................................................10

*Fort James Corp. v. Thiel Eugene Ratliff*,
    No. 3:99-CV-0148-D, 1999 WL 97932
    (N.D. Tex. Feb. 12, 1999)..........................................................................................19

*Found. Gov't Accountability v. U.S. Dep't of Just.*,
    No. 2:22-cv-00252-JLB-KCD (M.D. Fla.)..................................................................20

*Frozen Foods Express v. United States*,
    351 U.S. 40 (1956).....................................................................................................16

*Funk v. Stryker Corp.*,
    631 F.3d 777 (5th Cir. 2011) ..................................................................................5, 18

*GE Cap. Com. Inc. v. Wright & Wright Inc.*,
    No. 3:09-CV-572-L, 2009 WL 1148235
    (N.D. Tex. Apr. 28, 2009) ..........................................................................................19

*Gen. Elec. Co. v. EPA*,
    290 F.3d 377 (D.C. Cir. 2002)....................................................................................16

*In re Sealed Case*,
    121 F.3d 729 (D.C. Cir. 1997)....................................................................................20

*Int'l Chem. Workers Union v. Columbian Chem. Co.*,
    331 F.3d 491 (5th Cir. 2003) .....................................................................................19

*Jackson v. Biden*,
    No. 2:22-cv-241-Z, 2023 WL 8288993
    (N.D. Tex. Oct. 10, 2023)...........................................................................................22

iv

*Jackson v. Wright*,
   82 F.4th 362 (5th Cir. 2023) ....................................................................... 13

*Johnson v. TheHuffingtonPost.com, Inc.*,
   21 F.4th 314 (5th Cir. 2021) ....................................................................... 22

*Kilroy v. Husted*,
   868 F. Supp. 2d 652 (S.D. Ohio 2012) ....................................................... 12

*La Botz v. FEC*,
   889 F. Supp. 2d 51 (D.D.C. 2012) ................................................................ 9

*LaRoque v. Holder*,
   650 F.3d 777 (D.C. Cir. 2011) ...................................................................... 8

*Larson v. Montana ex rel. Stapleton*,
   434 P.3d 241 (Mont. 2019) .......................................................................... 12

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
   572 U.S. 118 (2014) ..................................................................................... 13

*Louisiana v. Biden*,
   55 F.4th 1017 (5th Cir. 2022) ...................................................................... 10

*Lovelace v. Software Spectrum Inc.*,
   78 F.3d 1015 (5th Cir. 1996) ......................................................................... 5

*Loving v. U.S. Dep't of Def.*,
   550 F.3d 32 (D.C. Cir. 2008) ....................................................................... 20

*Massachusetts v. EPA*,
   549 U.S. 497 (2007) ....................................................................................... 6

*Mecinas v. Hobbs*,
   30 F.4th 890 (9th Cir. 2022) .......................................................................... 8

*Morrison v. City of Baton Rouge*,
   761 F.2d 242 (5th Cir. 1985) .................................................................... 5, 23

*Murphy v. Amarillo Nat'l Bank*,
   No. 2:20-CV-048-Z, 2021 WL 40779
   (N.D. Tex. Jan. 5, 2021) ................................................................................ 5

*Nat'l L. Party of U.S. v. FEC*,
   111 F. Supp. 2d 33 (D.D.C. 2000) ................................................................ 9

*Ne. Fla. Ch. of Assoc'd Gen. Cont'rs of Am. v.
   City of Jacksonville*,
   508 U.S. 656 (1993) ....................................................................................... 8

*Ne. Ohio Coal. for Homeless & Serv. Emps.*
   *Int'l Union, Loc. 1199 v. Blackwell*,
   467 F.3d 999 (6th Cir. 2006) ...................................................................... 12

*Nelson v. Warner*,
   472 F. Supp. 3d 297 (S.D. W. Va. 2020) ..................................................... 9

*Oh. Forestry Ass'n v. Sierra Club*,
   523 U.S. 726 (1998) .................................................................................... 6

*Ohio ex rel. Hough v. Brown*,
   364 N.E.2d 275 (Ohio 1977) ..................................................................... 12

*Pace v. Cirrus Design Corp.*,
   93 F.4th 879 (5th Cir. 2024) ...................................................................... 21

*Rest. L. Ctr. v. U.S. Dep't of Labor*,
   66 F.4th 593 (5th Cir. 2023) ........................................................................ 7

*SEC v. Cherif*,
   933 F.2d 403 (7th Cir. 1991) ..................................................................... 19

*SEC v. Collector's Coffee, Inc.*,
   697 F. Supp. 3d 138 (S.D.N.Y. 2023) ....................................................... 19

*Shays v. FEC*,
   414 F.3d 76 (D.C. Cir. 2005) .................................................................. 8, 9

*Sierra Club, Lone Star Ch. v. Cedar Point Oil Co. Inc.*,
   73 F.3d 546 (5th Cir. 1996) ....................................................................... 14

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016) .................................................................................... 4

*St. Croix Surgical Sys., LLC v. Cardinal Health, Inc.*,
   No. 2:17-CV-00500-JRG-RSP, 2018 WL 9869367
   (E.D. Tex. Feb. 28, 2018) .......................................................................... 22

*Tex. Cable & Telecomms. Ass'n v. Hudson*,
   265 F. App'x 210 (5th Cir. Feb. 7, 2008) .................................................... 7

*Tex. Dem. Party v. Benkiser*,
   459 F.3d 582 (5th Cir. 2006) .................................................................. 8, 14

*Texas v. Biden*,
   10 F.4th 538 (5th Cir. 2021) ...................................................................... 16

*Texas v. Cardona,*
 -- F. Supp. 3d --, 2024 WL 3658767
 (N.D. Tex. Aug. 5, 2024) ................................................................................ 16

*Texas v. Cardona,*
 No. 4:23-CV-00604-O, 2024 WL 2947022
 (N.D. Tex. June 11, 2024) ............................................................................... 16

*Texas v. EEOC,*
 933 F.3d 433 (5th Cir. 2019) ..................................................................... 15, 16

*Texas v. Mayorkas,*
 No. 2:22-CV-094-Z, 2024 WL 455337
 (N.D. Tex. Feb. 6, 2024) ................................................................................... 6

*Texas v. United States,*
 497 F.3d 491 (5th Cir. 2007) ............................................................................. 6

*Texas v. United States,*
 809 F.3d 134 (5th Cir. 2015) .................................................................... *passim*

*The Found. Gov't Accountability v. U.S. Dep't of Just.,*
 No. 2:22-cv-00252-JLB-KCD (M.D. Fla.) ...................................................... 20

*U.S. Dep't of Com. v. New York,*
 588 U.S. 752 (2019) ................................................................................... 15, 16

*United States v. Fallen,*
 498 F.2d 172 (8th Cir. 1974) ........................................................................... 19

*United States v. Nixon,*
 418 U.S. 683 (1974) .................................................................................. 20, 21

*United States v. Quezada,*
 754 F.2d 1190 (5th Cir. 1985) ......................................................................... 18

*Uzuegbunam v. Preczewski,*
 141 S. Ct. 792 (2021) ................................................................................. 10, 18

*Venable v. La. Worker's Comp. Corp.,*
 740 F.3d 937 (5th Cir. 2013) ............................................................................. 5

*Wages & White Lion Invs., L.L.C. v. United States
 Food & Drug Admin.,*
 16 F.4th 1130 (5th Cir. 2021) ........................................................................... 6

*Ward v. Thompson*,
  No. 22-16473, 2022 WL 14955000
  (9th Cir. Oct. 22, 2022) ................................................................. 20

*Wyatt v. Kaplan*,
  686 F.2d 276 (5th Cir. 1982) ......................................................... 22

**Statutes**

Administrative Procedure Act, 5 U.S.C. § 706 ........................................ *passim*

Higher Education Act of 1965 ................................................................ 2, 11

MONT. CODE § 13-1-201 ......................................................................... 12

MONT. CODE § 2-15-401 ......................................................................... 12

MONT. CONST. art. VI, § 1 ...................................................................... 12

National Voter Registration Act ........................................................... 22

OHIO CONST. art. III, § 1 ........................................................................ 11

OHIO REV. CODE § 3501.05(EE) .............................................................. 12

OHIO REV. CODE § 3501.07(a) ................................................................ 12

**Other Authorities**

THE AMERICAN HERITAGE DICTIONARY (3d ed. 1996) ................................. 17

**Rules**

FED. R. CIV. P. 8(a)(1) ............................................................................ 4

FED. R. EVID. 201(b) ............................................................................. 5

**Regulations**

Executive Order No. 14,019,
  86 Fed. Reg. 13,623 (Mar. 7, 2021) ....................................... *passim*

## INTRODUCTION AND SUMMARY OF ARGUMENT

Defendants are recycling the same tired arguments their predecessors attempted when unlawfully granting amnesty to illegal aliens in the deferred-action program known as DAPA. There, they argued the plaintiff lacked standing, that DAPA was not a final action of any sort, and it was (they said) certainly not a substantive rule. The Fifth Circuit rejected all those arguments, and held DAPA was arbitrary and capricious to boot. Defendants' arguments have not improved with age. The actions implementing Executive Order No. 14,019, 86 Fed. Reg. 13,623 (Mar. 7, 2021) (the "EO"), Ex. 1, suffer from all the same flaws, and so Plaintiffs' challenge under the Administrative Procedure Act (APA) should proceed.

There are four types of Plaintiffs here, all suffering cognizable injuries. First are election administrators, who are incurring increased costs and administrative burdens because of the EO agency actions. These administrators welcome eligible persons registering to vote, but object to the significantly higher rate of errors (including unsalvageable errors), duplicates, and ineligible individuals associated with untrained and agenda-driven voter registration efforts. This added burden need not be reduced to a dollar amount, which would likely not be ascertainable at this stage in any event. It is enough that they can specify the sources and nature of the increase.

Second are political candidates, who must run in the face of a government-imposed competitive disadvantage, as the unlawful agency actions here are likely to favor their political opponents. And third are political parties, who have standing for the same reason. For these two classes of Plaintiffs, case law does not require quantitative data. Instead, binding Fifth Circuit precedent, elaborated upon by voluminous case law from other jurisdictions, shows that if the argument and evidence is such that the Court can conclude that the new competitive environment is less hospitable than the status quo ante, then Plaintiffs have standing. Nor must the change tend

to produce a different result. Numerous cases hold that the unlawful change itself constitutes the injury, without any regard to whether the candidate or the party might lose the race as a result. These articulations of harm under the APA are consistent with other areas of law, including due process, equal protection, and other constitutional rights.

Fourth are sovereign States. The Constitution grants States primacy over elections, yet the EO agency actions impair States' interests. Specifically here, the EO actions from the Education Department require States to take action and expend resources to both register voters and encourage voting and mail-in voting, or risk possible reduction in federal funds under the Higher Education Act. For public universities, those resource expenditures are a drain on the State's fisc. These are monetary injuries for which States can seek redress.

Plaintiffs' preliminary injunction briefing is already on file, in which Plaintiffs explain much of how their injuries is traceable to the EO and its implementing agency actions, and why Plaintiffs' requested relief will remedy those injuries. Plaintiffs further address those points here, including how their requested relief satisfies at minimum partial redressability under Article III. And this Court's providing relief on any of the matters presented here will at least partially remedy the injuries of at least some of the Plaintiffs, which satisfies redressability.

Finally, this Court should draw an adverse inference against Defendants for the gaps in the evidentiary record. Congress has subpoenaed critical evidence, which Defendants are unlawfully withholding. Negative inferences are appropriate under such circumstances, and Defendants have the option at any time to end their stonewalling, become transparent, and resolve the troubling questions that surround the EO and its implementation. Defendants' claimed defense elsewhere—not even formally asserted before this Court—of presidential communications privilege is absurd. That privilege exists to provide the President with unfiltered advice and access to vital information

2

as he makes consequential decisions for the Nation. It does not apply to any of the items relevant here, including the agency strategic plans sent to the White House. This Court would benefit from ordering briefing and scheduling a hearing if Defendants attempt such an assertion here.

In the alternative, this Court should defer ruling on Defendants' motion in whole or in part while ordering limited jurisdictional discovery. While the record is sufficient to establish standing for at least some of the Plaintiffs on some of the counts in this case, the Court might conclude that additional Plaintiffs and additional claims might be questionable under the current record. Should that be so, while this Court should proceed on the matters in which the Motion to Dismiss should be denied, the Court should also allow Plaintiffs jurisdictional discovery to remedy any potential defects.

For all these reasons, Defendants' motion should be denied.

## ARGUMENT

### I.    PLAINTIFFS HAVE STANDING.

The instant case is on all fours with *Texas v. United States*, 809 F.3d 134 (5th Cir. 2015), *aff'd by an equally divided Court*, 579 U.S. 547 (2016) (mem.) (*DAPA*), and several Plaintiffs have standing here on that basis alone. In *DAPA*, the challenged federal agency actions were not styled as any type of final agency action, did not regulate the plaintiff but instead had only downstream adverse effects, concerned future injuries, lacked specific data, and were challenged on jurisdictional grounds analogous to this case. *Id.* at 151–62. Defendants should fail here as they did there.

Indeed, Deferred Action for Parents of Childhood Arrivals (DAPA) was just an internal guidance memo at the U.S. Department of Homeland Security (DHS) about how frontline personnel should exercise discretion on a case-by-case basis as to whether to deport an illegal alien immediately, versus deferring that determination until some later time. *Id.* at 147. The Fifth

Circuit rejected the federal government's arguments against standing. One basis for standing was that illegal aliens in Texas would be able to get driver's licenses, and the court assumed that an unspecified number would attempt to get a license, of which some would succeed, each of which Texas would subsidize. *Id.* at 155. There were no offsetting benefits to plaintiff. *Id.* at 155–56. Despite the fact that there were multiple steps between the agency action and the harm to the plaintiff, with several levels of court-determined likelihood (i.e., likely that some eligible persons would apply for DAPA, likely that some of them would receive it, likely that some of those would apply for a license, and likely that some of them would succeed, thus triggering the injury), the harm was not too speculative or attenuated, nor did such a multi-link causal chain defeat traceability. *See id.* at 156. Neither did the fact that the injury hinged on the independent acts of third parties destroy standing, because the court could assume third parties would act in predictable ways. *Id.* at 160. This mere guidance memo constituted a final agency action. *Id.* at , 153 n.82, 163–64. More than that, it qualified as a substantive rule, triggering notice-and-comment requirements. *Id.* at 176–78. And the action was also arbitrary and capricious. *Id.* at 178–86. Defendants made similar arguments there as here on both threshold and merits issues. Their arguments continue to lack merit.

To have standing, Plaintiffs "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Each element is present here. A complaint requires "a short and plain statement of the grounds for the court's jurisdiction" that, if proven, show that the plaintiff is entitled to relief. FED. R. CIV. P. 8(a)(1); *see Arthur H. Richland Co. v. Harper*, 302 F.2d 324, 325 (5th Cir. 1962) (Federal Rules "do not require a claimant to set out in detail the facts upon which he bases his claim"). This is not a motion for

summary judgment, where the standards are more stringent. *See, e.g.*, *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 726 (5th Cir.) (court erred in treating pleadings as motion for summary judgment without allowing discovery), *modified on other grounds*, 355 F.3d 356 (5th Cir. 2003). Rule 8(a) thus requires only short and concise statements that allows for investigating specific factual details to be ascertained in the discovery process. *Morrison v. City of Baton Rouge*, 761 F.2d 242, 244 (5th Cir. 1985); *see also Murphy v. Amarillo Nat'l Bank*, No. 2:20-CV-048-Z, 2021 WL 40779, at *3 (N.D. Tex. Jan. 5, 2021). A motion to dismiss under Rule 12(b)(1) should be granted only if the Court determines that Plaintiffs cannot prove a plausible set of facts that would establish jurisdiction. *Venable v. La. Worker's Comp. Corp.*, 740 F.3d 937, 941 (5th Cir. 2013).

The exhibits attached to this brief provide evidence of the harms Plaintiffs are suffering, as do exhibits to previous filings. This Court may "consider matters of which [it] may take judicial notice." *Brandt Eng'rs Grp. Ltd. v. Roberts*, No. 2:19-CV-00051-Z-BP, 2019 WL 13193885, at *2 (N.D. Tex. Dec. 6, 2019) (quoting *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017–18 (5th Cir. 1996)). The Court may take notice of official statements and publications by federal agencies and public officials. *See Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (interpreting FED. R. EVID. 201(b)). Such official publications and statements are referenced throughout this briefing, and this Court should take cognizance of them.

### A. Defendants' actions implementing the EO are injuring Plaintiffs.

Plaintiffs have been suffering injuries, will continue to suffer injuries, and are likely to suffer future injuries from the EO and the agency actions implementing the EO. Costs of compliance, even if minor, are sufficient to constitute injury in fact. *See United States v. Students Challenging Reg. Agency Procs.*, 412 U.S. 669, 689 n.14 (1973) (recognizing $5 and $1.50 as injury-in-fact). Plaintiffs thus suffer injury from compliance costs, even for the modest costs. *See*

*Wages & White Lion Invs., LLC v. FDA*, 16 F.4th 1130, 1142 (5th Cir. 2021). It is also legally cognizable harm for one to be forced "to modify one's behavior to avoid possible adverse consequences." *Texas v. United States*, 497 F.3d 491, 499 (5th Cir. 2007) (quoting *Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 734 (1998)) (cleaned up).

Under the APA and similar statutes, Congress has defined both substantive and procedural harms. "Congress has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before." *Massachusetts v. EPA*, 549 U.S. 497, 516 (2007) (citation omitted).

### 1. The actions unlawfully consume election administrators' resources.

Plaintiffs LaRose, Jacobsen, Genetski, and Pinnow are "institutional plaintiff[s] asserting an institutional injury" to what they believe is their constitutional and statutory "power to regulate elections." *Texas*, 809 F.3d at 154 (citing *Ariz. State Leg. v. Ariz. Indep. Redistricting Comm'n*, 576 U.S. 787, 803 (2015)). For those election administrators, there are several injuries. One injury is the attendant monetary cost and resources due to increased registrations, though Plaintiffs here welcome registration of eligible individuals through the lawful and optimal process of registering with trained professionals in traditional fashion. Even then, it is still a cognizable harm that is fairly traceable to an illegal agency action. *See id.* at 157 ("[S]tates could offset almost any financial loss [caused by a defendant's action] by raising taxes or fees. The existence of that alternative does not mean they lack standing."); *see also Texas v. Mayorkas*, No. 2:22-CV-094-Z, 2024 WL 455337, at *3 (N.D. Tex. Feb. 6, 2024) ("Municipalities generally have standing to challenge laws that result or threaten to result in substantial financial burdens." (cleaned up)), *reconsideration denied*, No. 2:22-CV-094-Z, 2024 WL 3173296 (N.D. Tex. June 25, 2024).

Registrations from implementing the EO are far from optimal. Registrants, who are solicited by untrained individuals operating outside state or local buildings, to provide personal

identifying information (PII) for registrations, such as home addresses, phone numbers, email addresses, and the last four digits of their Social Security Numbers (SSN) often either: (1) provide false information, (2) deliberately leave parts of required PII blank, (3) leave them blank unintentionally, as a combination of not intentionally seeking to register, or the process being facilitated by individuals who have not been trained by the State or the county, or (4) are already registered, resulting in duplicate registrations.  Katz Dec. ¶¶ 7, 8, 11, App. 35–36; Leland Dec. ¶¶ 5–6, 8, 14, App. 39–40; Genetski Dec. ¶¶ 9–12, App. 45; *see also* ECF No. 17 at 3–4.

Elections offices waste their limited resources following up on these registrations, as staff take time attempting to process the registrations; contact would-be registrants, when permitted, to cure these defects; or find out only at the end of the process that the effort was wasted.  Such substandard registration efforts also result in increased voter confusion. Voter confusion leads to, among other things, increased constituent-service time, additional inspections, inspector training, public education, and costs associated with postage and fees.  Genetski Dec. ¶¶ 8, 11, App. 45.

It is difficult to quantify these injuries with a dollar figure.  However, standing does not require converting these allegations "of harm into a specific dollar amount."  *Rest. L. Ctr. v. U.S. Dep't of Labor*, 66 F.4th 593, 600 (5th Cir. 2023).  These man-hours, materials, and related expenses cost money and resources, and are more than de minimis.  The delta of these expenses unnecessarily wastes these Plaintiffs' resources and are injuries-in-fact.

### 2.  The actions competitively disadvantage political parties and candidates.

Plaintiff political parties and candidates are likewise injured.  The injury is that in a competitive environment, if a federal agency action makes political races less favorable competitively vis-à-vis the status quo ante, then the disadvantaged candidate or party has suffered an injury.  *Tex. Cable & Telecomms. Ass'n v. Hudson*, 265 F. App'x 210, 217–18 (5th Cir. Feb. 7, 2008) ("In addition to competitive or economic injury, … unlawfully discriminat[ing] against

[plaintiffs'] membership by unjustifiably favoring non-incumbents over incumbents … is recognizable for standing irrespective of whether the plaintiff will sustain an actual or more palpable injury as a result of the unequal treatment under law or regulation." (citing *Ne. Fla. Ch. of Assoc'd Gen. Cont'rs of Am. v. City of Jacksonville*, 508 U.S. 656, 666 (1993))); *cf. Clinton v. City of New York*, 524 U.S. 417, 433 n.22 (1998) ("denial of a benefit" can create Article III injury "irrespective of the end result").

That conceptualization of Article III injury is consistent with numerous other cases.  *See, e.g.*, *Mecinas v. Hobbs*, 30 F.4th 890, 899 (9th Cir. 2022) ("[B]ecause the injury is the burden of being forced to compete under the weight of a state-imposed disadvantage," plaintiffs need not allege "that the primacy effect has changed (or will imminently change) the actual outcome of a partisan election." (citation omitted)); *LaRoque v. Holder*, 650 F.3d 777, 787 (D.C. Cir. 2011) (because "candidates may have standing to challenge illegally structured campaign environments even if the multiplicity of factors bearing on elections prevents them from establishing with any certainty that the challenged rules will disadvantage their campaigns, [plaintiff] has no obligation to demonstrate definitively that he has less chance of victory under the partisan than the nonpartisan system." (quoting *Shays v. FEC*, 414 F.3d 76, 90–91 (D.C. Cir. 2005)) (cleaned up)).

"[C]ompetitor suits are ubiquitous in administrative law."  *Corner Post, Inc. v. Bd. of Governors of Fed. Res. Sys.*, 144 S. Ct. 2440, 2464 (2024) (Kavanaugh, J., concurring).  As the Fifth Circuit noted approvingly, courts have held that political actors have standing to challenge voting rules that could diminish their political power under similar circumstances where a party official had standing to challenge an opposing party's candidate's ballot placement and a challenged action reduced (but not reversed) the likelihood of a plaintiff political party's candidate's success.  *Tex. Dem. Party v. Benkiser*, 459 F.3d 582, 587 n.4 (5th Cir. 2006) (citing as

persuasive authority the Second and Ninth Circuits and two federal district courts).  As the district court in *Nelson* held, "[t]he inability to compete on an equal footing due to the application of allegedly biased criteria has been recognized in many contexts as an injury in fact sufficient to support constitutional standing."  *Nelson v. Warner*, 472 F. Supp. 3d 297, 304 (S.D. W. Va. 2020) (citing *Nat'l L. Party of U.S. v. FEC*, 111 F. Supp. 2d 33, 44 (D.D.C. 2000)), *rev'd on other grounds*, 12 F.4th 376, 378 (4th Cir. 2021); *accord La Botz v. FEC*, 889 F. Supp. 2d 51, 56 (D.D.C. 2012) (citing, *inter alia*, *Shays*, 414 F.3d at 85) (holding "candidates who allege that they were forced to compete in an illegally structured campaign environment have stated a sufficient injury for the purposes of Article III").  "The [Supreme] Court has consistently held that the plaintiffs incurring [competitive] injuries are adversely affected or aggrieved by agency action within the meaning of the APA."  *Corner Post*, 144 S. Ct. at 2465 (Kavanaugh, J., concurring) (cleaned up).

That is true even in the absence of quantitative data—at least at this preliminary stage—especially when there is at least general data that would lend itself to an inference of specific impact.  *See Crawford v. Marion Cnty. Election Bd.*, 472 F.3d 949, 951 (7th Cir. 2007) ("The fact that the added cost has not been estimated and may be slight does not affect standing, which requires only a minimal showing of injury."), *aff'd*, 553 U.S. 181 (2008) ("No doubt most people who don't have photo ID are low on the economic ladder and thus, if they do vote, are more likely to vote for Democratic than Republican candidates.  Exit polls in the recent midterm elections show a strong negative correlation between income and voting Democratic ….  Thus the new law injures the Democratic Party by compelling the party to devote resources to getting to the polls those of its supporters who would otherwise be discouraged by the new law from bothering to vote.  The fact that the added cost has not been estimated and may be slight does not affect standing, which requires only a minimal showing of injury."); *see also Tex. Cable & Telecomms. Ass'n*, 265

F. App'x at 218 n.4 ("Such economic data is not required under *Northeastern Florida*—discrimination and its coordinate loss of opportunity to compete is sufficient."); *Louisiana v. Biden*, 55 F.4th 1017, 1035 (5th Cir. 2022) ("Obviously, this Court cannot accurately predict how many employees would be fired were this injunction to be lifted.  Under our precedent, it is sufficient to show that … enough employees would likely leave as to constitute more than de minimis harm, at which point it is not so much the magnitude but the irreparability that counts." (cleaned up)).  Indeed, as the Fifth Circuit reasoned in *DAPA*, where the injury arguments were similar to the instant case, "standing analysis is not an accounting exercise."  *Texas*, 809 F.3d at 156 (cleaned up).

This is common in other areas of law as well, where "the denial of procedural due process should be actionable for nominal damages without proof of actual injury."  *Carey v. Piphus*, 435 U.S. 247, 266 (1978).  And in the equal-protection context, the University of Texas argued that Abigail Fisher lacked standing to challenge the university's racial preferences because her grades and scores would not have made her competitive for admission.  Br. for Resp't at 16–17 n.6, Reply Br. for Pet'r at 3–4 n.1, Tr. Oral Arg. at 2–8, *Fisher v. Univ. of Tex. at Austin*, 570 U.S. 297 (2013) (No. 11-345).  Despite the parties' briefing and argument, the Supreme Court ruled on the merits that the university violated Fisher's right to equal protection unless the school's denial satisfied strict scrutiny.  *See Fisher v. Univ. of Tex. at Austin*, 570 U.S. 297, 310–15 (2013).  So too, nominal damages for violations of other rights with no measurable injuries are sufficient to defeat mootness, meaning that the plaintiff both had—and continues to have—standing.  *See Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 798–800 (2021).

Denying competitive standing for APA suits "would also largely eliminate the common form" of APA litigation where private litigants "sue a federal agency based on the externalities

that an agency action is likely to produce." *Corner Post*, 144 S. Ct. at 2465 (Kavanaugh, J., concurring). Such litigation "often arises" when federal agencies take action that has "*potential* effects" on non-parties (such as third parties or even more generalized and abstract constructs, like the environment) that in turn potentially have adverse downstream effects on the plaintiffs in that litigation. *Id.* (emphasis added). The Supreme Court has not regarded such potential harms as speculative, instead holding that they satisfy Article III. Each of the candidates and parties submitting declarations here articulate how the EO agency actions disadvantage their campaigns. Jackson Dec. ¶¶ 6–24, App. 11–13; Meuser Dec. ¶¶ 7–23, App. 16–18; Tiffany Dec. ¶¶ 6–27, App. 21–23; Krause Dec. ¶¶ 5–13, App. 27–28; Essayli Dec. ¶¶ 6–18, App. 31–33; Gorka Dec. ¶¶ 7– 30, App. 51–53; Shepard Dec. ¶¶ 7–37, App. 56–59; Rice Dec. ¶¶ 7–24, App. 63–64. Testimony from experts and those experienced in this area supports those assessments. Kincaid Dec. ¶¶ 10– 41, App. 67–70; ECF No. 17 at 5, 9–11. Article III requires no more.

### 3. States have interest in elections and risk loss of federal funding for noncompliance with the EO.

Moreover, two Plaintiffs here are Secretaries of State responsible for elections in their respective States. Their States face a potential loss of federal funding unless they expend resources on complying with the EO. The White House announced that the U.S. Department of Education (ED) would "remind educational institutions of their existing obligation and encourage institutions to identify further opportunities to assist eligible students with voter registration." ECF No. 11-8. This is a reference to the Higher Education Act of 1965 (HEA), mandating that universities and colleges "make a good faith effort to distribute a mail voter registration form, requested and received from the State, to each student enrolled in a degree or certificate program and physically in attendance at the institution, and to make such forms widely available to students at the institution." Dear Colleague Ltr. (Apr. 21, 2022) (quoting HEA § 487(a)(23)), Ex. 2. ED framed

that mandate "remind[ing]" recipients "of the related Federal requirements association with … participation in the Federal student aid programs[.]"  *Id.*

The Ohio Secretary of State is an executive branch officer specifically created by the Ohio Constitution.  OHIO CONST. art. III, § 1.  As "the chief election officer," he "may administer oaths, issue subpoenas, summon witnesses, compel the production of books, papers, records, and other evidence, and fix the time and place for hearing any matters relating to the administration and enforcement of the election laws."  OHIO REV. CODE § 3501.05(EE); *see also Kilroy v. Husted*, 868 F. Supp. 2d 652, 658 (S.D. Ohio 2012).  He appoints members of the Board of Elections, OHIO REV. CODE § 3501.07(a), with "broad discretion in determining whether recommended appointees are competent to be members." *Ohio ex rel. Hough v. Brown*, 364 N.E.2d 275, 276 (Ohio 1977). He has a unique interest in "ensuring the smooth administration" of elections in light of his constitutional and statutory duties.  *Ne. Ohio Coal. for Homeless & Serv. Emps. Int'l Union, Loc. 1199 v. Blackwell*, 467 F.3d 999, 1008 (6th Cir. 2006).

The Montana Secretary of State is similarly established by Montana's Constitution.  MONT. CONST. art. VI, § 1.  Her duties relate to the functioning of both government and elections, MONT. CODE § 2-15-401, including "as 'the chief election officer of this state' … 'to obtain and maintain uniformity in the application, operation, and interpretation of [its] election laws,'" *Larson v. Montana ex rel. Stapleton*, 434 P.3d 241, 260 (Mont. 2019) (quoting MONT. CODE § 13-1-201).

As already briefed, communicating expectations to recipients of federal funding that leads them to consider it possible that noncompliance could lead to a reduction in funding is actionable. ECF No. 38 at 5.  ED's Dear Colleague Letter certainly does so, but complying with ED's requirement would likely require schools to spend money.  Leland Dec. ¶¶ 19–23, App. 41.  For public universities, those funds come from the state coffers, becoming a monetary injury to the

States.  Accordingly, States such as Montana face a sufficient risk of loss of funding to have standing to challenge ED's requirement.  And as noted in previous filings, States have interests in election integrity.  *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 196 (2008).  The EO's actions opening the door for inaccurate or even fraudulent voting activity is contrary to those interests, injuring the States.  *See* Katz Dec. ¶ 14, App. 36.  This also increases the risk of noncitizen voting, which does occur.  *See* Gorka Dec. ¶¶ 27–28, App. 53.  For example, Ohio Secretary of State Frank LaRose—a Plaintiff here—identified 597 noncitizens on Ohio's voter rolls, 138 of whom had cast ballots.  Katz Dec. ¶ 13, App. 36.

Relatedly, on the issue of election integrity, AFPI is affected by the EO.  Vallante Dec. ¶¶ 2, 4–6, App. 74–75.  AFPI has expended additional time, effort, and resources to assess the extent of the effect on its mission and to counteract the EO's implementation with education programming and increased voter registration and get-out-the-vote efforts. Specifically, AFPI has worked to protect citizens in Michigan, Wisconsin, Pennsylvania, and Georgia from the effects of automatic voter registration and voter fraud, as part of its mission of safeguarding election integrity. *See Contender Farms, LLP v. USDA*, 779 F.3d 258, 266 (5th Cir. 2015) ("An increased regulatory burden typically satisfies the injury in fact requirement.").

### 4. Plaintiffs' injuries require only likely contributing factors, not but-for causation.

The agency actions need not be the but-for cause, or the proximate cause, of the injury. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 n.6 (2014).  It need only be a contributing factor to the injury.  "[A]ll [a plaintiff] needs to allege under Article III is that his … injuries are fairly traceable to the … defendants—not that the … defendants directly caused his injuries." *Jackson v. Wright*, 82 F.4th 362, 369 (5th Cir. 2023) (cleaned up).  "In order to be fairly traceable, the defendant's actions must contribute to the injury, but they do not have to

be the sole cause of the injury." *Dews v. Town of Sunnyvale*, 109 F. Supp. 2d 526, 561 (N.D. Tex. 2000); *accord Sierra Club, Lone Star Ch. v. Cedar Point Oil Co. Inc.*, 73 F.3d 546, 558 (5th Cir. 1996) ("Given the number of entities discharging chemicals into Galveston Bay, it would be virtually impossible for any of Sierra Club's members to trace his injuries to Cedar Point's discharge in particular. Rather, it is sufficient for Sierra Club to show that Cedar Point's discharge of produced water *contributes* to the pollution that impairs Douglas's use of the bay."). This is thus a "typical APA suit" in which an "unregulated plaintiff … challenge[s] an allegedly unlawful agency [action] that regulates others but also has adverse downstream effects on the plaintiff." *Corner Post*, 144 S. Ct. at 2460 (Kavanaugh, J., concurring).

For candidates, Plaintiffs need not prove that but for the agency action the new voter would not have registered or not have cast a ballot. First, a registration is an injury even if the person does not immediately cast a ballot, because registration numbers by themselves are a measure of competitiveness. *See Tex. Dem. Party*, 459 F.3d at 586 ("A second basis for the [Texas Democratic Party]'s direct standing is harm to its election prospects. The TDP's witnesses testified below that if the RPT were permitted to replace DeLay with a more viable candidate, then its congressional candidate's chances of victory would be reduced. In addition, according to the TDP, 'down-ballot' Democratic candidates, like county commissioners and judges, would suffer due to the change's effect on voter turnout and volunteer efforts."); *Dem. Exec. Comm. of Fla. v. Nat'l Repub. Sen. Comm.*, 950 F.3d 790, 794 (11th Cir. 2020) ("At the time of the … preliminary injunction in this case, the [National Republican Senatorial Committee]'s preferred candidate was winning a statewide election. The relief instituted by the preliminary injunction permitted a batch of new votes to be added to the previous totals, potentially threatening the election of that preferred candidate. The NRSC alleges that it responded by diverting personnel and time to educating voters

14

about the modified law …. [T]he NRSC has asserted its own standing in the case."). And in addition to turnout, election strategists often measure the competitiveness of a race by the percentage of voters registered as Republicans versus Democrats versus voters unaffiliated with either major party. Kincaid Dec. ¶¶ 25–28, App. 69.

As presented in previous briefing, for purposes of standing and causation, courts can assume that third parties will act in predictable ways. Here, Plaintiffs' "theory of standing … does not rest on mere speculation about the decisions of third parties; it relies instead on the predictable effect of Government action on the decisions of third parties." *U.S. Dep't of Com. v. New York*, 588 U.S. 752, 768 (2019). Defendants' actions here contribute to Plaintiffs' injuries. For election administrators, they contribute to an increase in administrative burden and consuming taxpayer resources. For States, they contribute to a threat of loss of federal funding. For candidates and political parties, they contribute to a competitive disadvantage. The EO agency actions will thus contribute to Plaintiffs' injuries, which is sufficient to confer standing to challenge those actions.

## B.    The actions are final agency actions.

The actions implementing the EO briefed in previous filings are final agency actions for purposes of the Administrative Procedure Act, 5 U.S.C. § 706. *Contra* Defs.' Mot. Dismiss, ECF No. 25 (MTD). Final agency actions mark "the consummation of the agency's decisionmaking process … by which rights or obligations have been determined, or from which legal consequences will flow," a test applied with a "flexible" and "pragmatic approach to finality." *Texas v. EEOC*, 933 F.3d 433, 441 (5th Cir. 2019) (cleaned up). *See* Mot. Prelim. Inj., ECF No. 16 at 8 (MPI). Each final action need not be:

> the culmination of lengthy administrative proceedings. It need only be an agency decision which imposes an obligation, denies a right, or fixes some legal relationship. If [it] … has a direct and immediate effect on the day-to-day business of the party asserting wrongdoing, and envisions immediate compliance with its

terms, the order has sufficient finality [and] the consequences are sufficiently concrete and definite to warrant review.

*Atorie Air, Inc. v. FAA*, 942 F.2d 954, 960 (5th Cir. 1991) (cleaned up). Final actions come in many forms. *See Texas v. Cardona*, -- F. Supp. 3d --, 2024 WL 3658767, at *6 n.44 (N.D. Tex. Aug. 5, 2024); *accord Texas v. Cardona*, No. 4:23-CV-00604-O, 2024 WL 2947022, at *7–10 (N.D. Tex. June 11, 2024). They "may result from a series of agency pronouncements rather than a single edict." *Barrick Goldstrike Mines Inc. v. Browner*, 215 F.3d 45, 48–49 (D.C. Cir. 2000) (cleaned up). "[S]keletal" agency explanations can be final with "accompanying explanatory correspondence." *Alaska Dep't of Env't Conserv. v. EPA*, 540 U.S. 461, 497 (2004). Cases interpret final agency action expansively, including the decision to add a question to a government form, *New York*, 588 U.S. at 767; policy statements; guidance documents; and enforcement discretion documents, *see Texas v. Biden*, 10 F.4th 538, 550 (5th Cir. 2021); *EEOC*, 933 F.3d at 443; *Texas*, 809 F.3d at 172–73. Final action can also be indirect regulation, such as language to federal funding recipients from which they could infer that disagreement would jeopardize funding. *See, e.g.*, *Frozen Foods Express v. United States*, 351 U.S. 40, 44–45 (1956)[1]; *see also Gen. Elec. Co. v. EPA*, 290 F.3d 377, 38384 (D.C. Cir. 2002). Courts thus do not elevate form over substance. *See, e.g.*, *Ciba-Geigy Corp. v. EPA*, 801 F.2d 430, 438 n.9 (D.C. Cir. 1986).

Many of the EO's implementing actions described in the Complaint and discussed in the MPI are thus final agency actions under the APA, subject to judicial review. *Contra* MTD 21; *see, e.g.*, 1st Am. Compl., ECF 11 ¶¶ 155, 174, 177, 178, 190, 199, 206, 213, 218, 232, 239, 245, 274, 286, 291. Those actions have a substantial impact on private interests, directly or indirectly imposing obligations on those receiving these directions and instructions, modifying the legal

---

[1] *Contra* MTD 28 (citing D.C. Circuit case that is inapposite because no funding was at issue).

rights (in this case, the right to vote) of the persons agencies deal with directly or through instrumentalities (like colleges), from which legal consequences flow.  These are discrete acts of attempting to register voters and engage in GOTV.  *Contra* MTD 22.  They are the specific acts enumerated in the First Amended Complaint, plus whatever undisclosed acts of a similar nature Defendants are unlawfully concealing from Congress and the public.  "[E]ach agency" must implement the EO. EO § 3(a).  All these final agency actions should be preliminarily enjoined, then vacated as this Court reaches final judgment.  *Contra* MTD 23.

These are final agency actions in part because they are outward-facing acts decided by agency leadership.  For example, the analysis might be different if an employee brought in voter registration forms without any decision from agency leadership, setting a stack on a breakroom table.  So too if that employee put a "Go Vote!" flier on a breakroom bulletin board where employees can choose to post items.  But these were not undirected actions taken by individual agency employees or groups within an agency acting together on their own.  The EO ordered agency heads to take *action*, which means that they must deliberate, decide, and then act.  *See* EO at *passim*.  Such an action is *final*.  And then the agency was to *formally* report to the White House its "strategic plan" of what actions the agency had taken, and also an agenda of what they would continue to roll out.  EO § 3(b).  "Strategic" means "[i]mportant or essential in relation to a plan of action."  *Strategic*, THE AMERICAN HERITAGE DICTIONARY (3d ed. 1996).  The lead definition for "Plan" means a "scheme, program, or method worked out beforehand for the accomplishment of an objective."  *Plan*, *id.*  Indeed, Defendants in *DAPA* emphatically argued that an enforcement discretion guidance memorandum was not a final action.  *Texas*, 809 F.3d at 171–73.  The Fifth Circuit rejected that argument, and this Court should do the same here.

### C.      Plaintiffs' injuries are fairly traceable and redressable.

The specific acts injuring Plaintiffs are traceable to the many final agency actions presented in the briefing, for all the reasons already explained here and in the MPI.  Enjoining or vacating those agency actions will therefore redress those injuries, at least in part.  While not "full redress," such an order from this Court would "effectuate a partial remedy" that satisfies redressability. *Uzuegbunam*, 141 S. Ct. at 801 (citation omitted).

## II.   THIS COURT SHOULD DRAW AN ADVERSE EVIDENTIARY INFERENCE AGAINST DEFENDANTS.

There are currently gaps in the evidentiary record.  While some of these would come out in the course of discovery, others should be revealed quickly through jurisdictional discovery.  Even so, Plaintiffs provide enough evidence here to defeat Defendants' Motion to Dismiss.  In addition to all that, there is grounds for this Court to draw an adverse inference against Defendants for parts of the missing evidence, as it is being concealed by them, much of it in violation of law.

### A.      Defendants are unlawfully withholding relevant evidence.

Key government documents in Defendants' possession have been subpoenaed by Congress.  Loudermilk Dec. ¶ 3, ECF No. 36-2.  In other proceedings, witnesses for Defendants have not been responsive.  Meuser Dec. ¶¶ 18–23, App. 17–18.  As previously explained to the Court, ECF No. 16 at 48–49, partly due to the Biden-Harris Administration's stonewalling on the EO's implementation and defying congressional subpoenas, Plaintiffs cannot fully prove prior to commencing discovery that a nationwide injunction is necessary to avert further irreparable injury.  The Court should therefore proceed on three premises.   First, official government publications regarding its policies and actions are admissible as evidence.  *See Funk*, 631 F.3d at 783; *United States v. Quezada*, 754 F.2d 1190, 1194 (5th Cir. 1985).  Second, courts apply a presumption of regularity and good faith, such that when the government says it is performing an

act, the Court will take the government at its word, absent sufficient evidence to the contrary. *United States v. Fallen*, 498 F.2d 172, 174 (8th Cir. 1974).

And third, this Court should draw a negative inference from Defendants' withholding of evidence—namely, that such evidence would show that the agency actions implementing the EO are inflicting on Plaintiffs irreparable harms that warrant an injunction. "[W]hen a subpoena is ignored" by a party to civil litigation, the opposing "party can draw an adverse inference." *Int'l Chem. Workers Union v. Columbian Chems. Co.*, 331 F.3d 491, 497 (5th Cir. 2003). Courts also "routinely draw adverse inferences in connection with preliminary injunction proceedings," including "where the government is a party to a civil proceeding." *SEC v. Collector's Coffee, Inc.*, 697 F. Supp. 3d 138, 154 (S.D.N.Y. 2023); *see, e.g.*, *SEC v. Cherif*, 933 F.2d 403, 417 (7th Cir. 1991). A party's "refusal to testify may be used against him" at the preliminary-injunction stage, "and the court may assume that his testimony would have been adverse to his interests." *Fort James Corp. v. Ratliff*, No. CIV. A. 399CV0148-D, 1999 WL 97932, at *2 (N.D. Tex. Feb. 12, 1999); *accord GE Cap. Com. Inc. v. Wright & Wright Inc.*, No. 3:09-CV-572-L, 2009 WL 1148235, at *3 (N.D. Tex. Apr. 28, 2009). Such an adverse inference may be drawn from a party's refusal to testify or provide information, even when that refusal did not occur in the course of the litigation in which the opposing party asks that an adverse inference be drawn. *See Farace v. Indep. Fire Ins. Co.*, 699 F.2d 204, 209–10 (5th Cir. 1983) (adverse inference could be drawn against litigant based on his "failure to cooperate with the fire marshal's investigation"). In fact, one circuit specifically held, in a case where a party sought an injunction pending appeal, that it was "appropriate to draw adverse inferences" in that civil proceeding because when a congressional "Committee sought to question her about [certain] activities, she invoked the Fifth Amendment and refused to answer." *Ward v. Thompson*, No. 22-16473, 2022 WL 14955000, at

*2 (9th Cir. Oct. 22, 2022).   Accordingly, "[i]n this civil proceeding, it is appropriate to draw adverse inferences" based on the government's previous failure to answer.  *See id.*

### B.      The withheld evidence is not protected by the presidential communications privilege.

Although Defendants have not yet asserted privilege to defend their missing documents before this Court, Plaintiffs will partially preempt that claim by explaining why no such privilege attaches here.   There are two forms of executive privilege: the commonly invoked deliberative process privilege, and the rarely invoked presidential communications privilege (PCP). Defendants have elsewhere implausibly claimed that the latter shields them from disclosure documents that likely contain valuable evidence here, including evidence of Plaintiffs' injuries. *See, e.g.*, *Found. Gov't Accountability v. U.S. Dep't of Just.*, No. 2:22-cv-00252-JLB-KCD (M.D. Fla.).

PCP exists because of every "President's need for complete candor and objectivity from advisers" regarding important decisions.  *United States v. Nixon*, 418 U.S. 683, 706 (1974).  As such, when applicable, it "calls for great deference from the courts."  *Id.*  It applies to "documents reflecting presidential decisionmaking and deliberations."  *Loving v. U.S. Dep't of Def.*, 550 F.3d 32, 37 (D.C. Cir. 2008) (cleaned up).

PCP is "no broader than necessary to ensure … the confidentiality of the presidential decision-making process," *Ctr. for Effective Gov't v. U.S. Dep't of State*, 7 F. Supp. 3d 16, 24 (D.D.C. 2013), and so "should be construed as narrowly as is consistent with ensuring that the confidentiality of the President's decisionmaking process is adequately protected."  *In re Sealed Case*, 121 F.3d 729, 752 (D.C. Cir. 1997).

PCP does not apply here.  The only presidential action here happened on March 7, 2021. The agencies did not send *recommendations* to the President.  They sent *reports* to the White

House (and to the Domestic Policy Advisor, not the President) on their strategic plans of what they were going to do.  The EO mentions recommendations in Section 6, but that applies only to facilitating federal employees' time off to vote.  *See* EO § 6.  Plaintiffs here seek the reports ordered in Section 3(b).  The EO includes no text indicating that such reports would be used for any subsequent presidential decision.  Therefore, this privilege does not apply.  This Court can order supplemental briefing from the parties as needed if Defendants assert PCP here, and would likely benefit from a hearing on this issue if such briefing is deemed necessary.

Finally, in the unlikely event that this Court concludes that any of these documents has a sufficiently colorable claim of privilege that further investigation is warranted, "even the very important interest in confidentiality of Presidential communications [would not be] significantly diminished by production of such material for in camera inspection."  *Nixon*, 418 U.S. at 706.  This Court may therefore order such inspection as the Court deems necessary.

## III.   ALTERNATIVELY, THIS COURT SHOULD DEFER RULING ON THE MOTION TO DISMISS TO ALLOW PLAINTIFFS TO ENGAGE IN JURISDICTIONAL DISCOVERY.

In the alternative, this Court should defer ruling on the MTD until Plaintiffs engage in limited jurisdictional discovery to ascertain the facts that Defendants are withholding.  For the reasons discussed above, this Court should at minimum deny Defendants' motion in part, and should permit a limited period of targeted discovery so Plaintiffs can further substantiate additional facts.

This Court has "broad discretion in all discovery matters," including jurisdictional discovery.  *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 220 (5th Cir. 2000).  Plaintiffs have a "right to conduct jurisdictional discovery" when they present "factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts."  *Pace v. Cirrus Design Corp.*, 93 F.4th 879, 902 (5th Cir. 2024) (quoting *Fielding v. Hubert Burda Media, Inc.*,

415 F.3d 419, 429 (5th Cir. 2005)).  A plaintiff must make "clear which specific facts he expects discovery to find."  *Id.* (quoting *Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314, 326 (5th Cir. 2021)).  And Plaintiffs need show only that such discovery is "likely to produce the facts needed to withstand dismissal."  *Johnson*, 21 F.4th at 326 (quoting *Davila v. United States*, 713 F.3d 248, 264 (5th Cir. 2013)) (cleaned up).  Such discovery "may be warranted where a plaintiff presents a non-frivolous basis for venue and the motion to dismiss raises issues of fact, or a more satisfactory showing of the facts is necessary."  *See Delta Electronics, Inc. v. Vicor Corp.*, -- F.Supp.3d --, 2024 WL 1200328, at *7 (W.D. Tex. 2024) (citing *Wyatt v. Kaplan*, 686 F.2d 276, 284 (5th Cir. 1982)) (cleaned up).  And it is especially appropriate where a defendant's statements are inconsistent with publicly available information.  *See id.* at *7 n.38 (citing *St. Croix Surgical Sys., LLC v. Cardinal Health, Inc.*, No. 2:17-CV-00500-JRG-RSP, 2018 WL 9869367, at *2 (E.D. Tex. Feb. 28, 2018)).  This Court has previously granted jurisdictional discovery when warranted.  *See, e.g.*, *Jackson v. Biden*, No. 2:22-cv-241-Z, 2023 WL 8288993, at *1 (N.D. Tex. Oct. 10, 2023).

There are several discovery items that are likely to remedy any evidentiary gaps in the record.  First, Plaintiffs would issue requests for the production of the strategic plans each agency submitted to the White House under Section 3(b) of the EO.  Second, Plaintiffs would submit no more than 10 written interrogatories, specifically to the U.S. Department of Health and Human Services regarding EO implementation pertaining to Medicaid, the Affordable Care Act exchanges, and DACA recipients; to the U.S. Department of Agriculture regarding registration and GOTV efforts involving nutrition assistance programs; to the U.S. Department of Homeland Security, regarding immigration ceremonies and services; to the U.S. Department of Justice, regarding registering and facilitating voting for convicted felons; to the Small Business

Administration regarding their outreach and field events; and to ED, regarding voter registration, mail-in voting, and GOTV efforts.  Third, Plaintiffs would seek a Rule 30(b)(6) deposition with a representative of each of those six agencies.  Plaintiffs believe discovery could be complete within 60 days of the Court's authorizing jurisdictional discovery.  Plaintiffs further believe that part—if not all—of the Motion to Dismiss can be denied based on the current record, and that the Court could deny Defendants' motion at least in part while this jurisdictional discovery is underway.

Even if the Court agrees that Plaintiffs have made a sufficient showing to defeat Defendants' MTD—as it should—this Court should still order jurisdictional discovery in either event, as Defendants will likely seek to appeal. The facts that are likely to be revealed in jurisdictional discovery are both likely to be central to this Court's analysis of the pending MPI, and will build the record that will further assist the Fifth Circuit on appeal regarding jurisdictional matters. *See Morrison*, 761 F.2d at 244 (reasoning that "pleading requirements of the federal rules are liberal; often the litigants may plead generally and discover the precise factual basis for their claim through equally liberal pretrial discovery procedures").

Some of the claims in this case—including whether the EO actions exceed Defendants' authority under the National Voter Registration Act, whether the specified actions qualify as substantive rules, and whether these programs and actions are spending money Congress has not appropriated—need no further development.  For others, such as whether these actions are arbitrary and capricious because they pursue an improper partisan objective or Defendants' purported justification is pretext—the Court might conclude that further evidence is needed before allowing the claim to move forward.[2]  So too, while several Plaintiffs have clearly adequately

---

[2]  It is even possible that some of these agency actions are not driven by partisan motivations.  For example, expanding on current Department of Defense (DOD) programs might not be (and Plaintiffs are not pressing claims against DOD in any event), and perhaps the same goes for others,

shown that they are likely suffering injuries, there are other Plaintiffs for whom missing facts might leave this Court in a position to conclude that their injuries are more speculative than likely, with such a lack attributable to Defendants' lack of transparency, including unlawfully withholding evidence. For example, although vacatur is necessarily nationwide in effect, that remedy would only be forthcoming on final judgment, and this Court might conclude that such supplementary material for the record is necessary to extend preliminary relief to certain Plaintiffs in specific States, either for the 2024 or the 2026 election cycle. So should the Court rule in Plaintiffs' favor that the instant motion can be denied on the current record, but only in part because this Court is not yet able to rule in Plaintiffs' favor with respect to certain claims or certain Plaintiffs, the Court should still grant this discovery, as it will likely allow additional Plaintiffs to move forward with additional claims.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss should be denied, or denied in part and deferred in part to allow Plaintiffs to take jurisdictional discovery.

---

like the Department of Veterans Affairs (VA). But many of these actions highlighted in the PI briefing—such as college campuses being referred to as a "Republican-killing death star," ECF No. 16 at 27, certainly carry implications of partisan advantage. Limited discovery should provide clarity on such issues.

September 27, 2024

Respectfully submitted,

/s/ Kenneth A. Klukowski
H. CHRISTOPHER BARTOLOMUCCI*
D.C. Bar No. 453423
KENNETH A. KLUKOWSKI
D.C. Bar No. 1046093
JUSTIN A. MILLER
Tex. Bar No. 24116768
SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
Telephone: (202) 787-1060
Facsimile: (202) 776-0136
kklukowski@schaerr-jaffe.com

JESSICA HART STEINMANN
Tex. Bar No. 24067647
MICHAEL D. BERRY
Tex. Bar No. 24085835
AMERICA FIRST POLICY INSTITUTE
1635 Rogers Road
Fort Worth, TX 76107
Telephone: (571) 348-1802

*Admitted pro hac vice

Counsel for Plaintiffs

25

## CERTIFICATE OF SERVICE

On September 27, 2024, the foregoing document was filed with the Clerk of Court for the United States District Court, Northern District of Texas using the Court's CM/EC system.  I hereby certify that I have served the document on all counsel of record by manner authorized by Federal Rule of Civil Procedure 5(b)(2) (ECF system).

*/s/ Kenneth A. Klukowski*
Kenneth A. Klukowski
*Counsel for Plaintiffs*